# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### MCALLEN DIVISION

| | | |
|---|---|---|
| **DAWN STAPLETON, as personal** | § | |
| **Representative of the Estate of Joshua** | § | |
| **Stapleton, and Jacqueline Louise** | § | |
| **Stapleton** | § | |
| *Plaintiffs* | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 7:23-cv-00069** |
| | § | |
| **ERNESTO LOZANO, JUSTIN LEE** | § | |
| **BECERRA, CESAR SOLIS AND** | § | |
| **THE CITY OF PROGRESO, TX** | § | |
| **et. al** | § | **JURY TRIAL DEMANDED** |
| *Defendants* | § | |

## <u>PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT</u>

<u>**THE CLAIM:**</u> Defendants Ernesto Lozano, Justin Lee Becerra, Cesar Solis, and the City of Progreso, TX violated the individual constitutional rights of Mr. Joshua Stapleton under the Fourteenth Amendment to the United States Constitution when they ignored his serious medical needs and refused to treat his serious medical needs as he lay doubled over on the floor of a holding cell in the Progreso City Jail. This deprivation was caused by City of Progreso policies, customs, and practices wherein Defendants individually and collectively allow officers to leave (or left) inmates unattended when responding to calls in locations other than the police station; allow the inmates in Progreso City Jail custody to be potentially supervised by the City of Progreso Fire Department; arrest drivers suspected of DWI (driving while intoxicated) with PI (public intoxication) instead, so the City could reap the revenue borne from those arrests rather than transporting them to the Hidalgo County Jail; and in failing to check on inmates at least once each hour and ensuring their safety and health. This failure resulted in Mr. Stapleton's agonizing and untimely expiration. Mr. Stapleton's injuries resulted directly and only from this clearly unconstitutional deprivation.

**TO THIS HONORABLE COURT:**

NOW COMES DAWN STAPLETON as the presumed administrator of The Estate of JOSHUA STAPLETON and JACQUELINE LOUISE STAPLETON, individually (hereinafter referred to as "Plaintiffs"), complaining of Defendants CITY OF PROGRESO, TEXAS (hereinafter referred to as "City"), TEXAS and ERNESTO LOZANO (hereinafter referred to as "Lozano"), JUSTIN LEE BECERRA (hereinafter referred to as "Becerra"), and CESAR SOLIS (hereinafter referred to as "Solis"), in their individual capacities, hereinafter may also be called, jointly, "Individual Defendants," and for cause of action, would respectfully show unto the Court and jury the following:

### I.    REQUEST PURSUANT TO RULE 28 FOR SUBSTITUTION OF TRUE NAME

To the extent that the above-named Defendants and Parties are conducting business pursuant to a trade name or assumed name, then relief is sought against them pursuant to the terms of Rule 28 of the Texas Rules of Civil Procedure, and Plaintiff hereby demands upon answering this suit, that the Defendants and Parties answer in their correct legal and assumed names.

### II.    NATURE OF THE CASE

1. This is an action brought by Plaintiffs pursuant to 42 U.S.C. § 1983 against the City of Progreso, TX, and Ernesto Lozano, Justin Lee Becerra, and Cesar Solis, individually, in violation of the individual rights of Decedent, JOSHUA STAPLETON (hereinafter referred to as "Mr. Stapleton"), under the Fourteenth Amendment to the United States Constitution for the Defendants' deliberate indifference to Mr. Stapleton's serious medical needs and disregard for the serious medical harm Mr. Stapleton stood to and did suffer. The actions alleged herein are of such a nature as to shock the conscience and are cruel and unusual in their oppressiveness.

2. This is also a wrongful death action and a survival brought by Plaintiffs pursuant to Texas Civil Practice and Remedies Code, Chapter 71, for the wrongful death of Joshua Stapleton and the needless suffering he endured during his time incarcerated at the City of Progreso, Texas jail.

2

Plaintiffs contend that the City of Progreso, TX had actual notice of Mr. Stapleton's death, and thus the notice requirements under Sec. 101.101(a) and (b) are inapplicable in this instance.

### III.   PARTIES

3.  Decedent JOSHUA STAPLETON (hereinafter "Mr. Thompson") was an individual being held in the custody of the City of Progreso, TX Jail at the time of his expiration and the incidents serving as the basis of this lawsuit. Mr. Stapleton was unmarried and a resident of Hidalgo County at the time of his death.

Josh was a beloved brother, son, friend, and family member. He is yet beloved by his family and his legacy lives on in all those who knew and loved him.





4. Plaintiff **DAWN STAPLETON**, is a resident of Massachusetts and was at the time of the incident serving as the basis of this lawsuit. Ms. Stapleton is the biological sister of Decedent and the personal representative of The Estate of JOSHUA STAPLETON. Ms. Stapleton brings this as a survival action on behalf of Mr. Stapleton per Texas Civil Practice and Remedies Code, §71.021.

5. Plaintiff JACQUELINE LOUISE STAPLETON is a resident of Hidalgo County, TX, and was at the time of the incident serving as the basis of this lawsuit. Ms. Mitcham is the biological mother of Decedent and brings this on behalf of herself and all other wrongful death beneficiaries per Texas Civil Practice and Remedies Code, §71.004.

6. Defendant **CITY OF PROGRESO, TEXAS** is a political subdivision of the State of Texas and the City of Progreso Police Department is an agency operated thereunder.

7. The City of Progreso Police Department is funded and operated by the City of Progreso, Texas Board of Alderman, which may also be known as the City Council. Mr. Alberto Rodriguez is the current Chief of Police for the City of Progreso, TX.

8. Mayor Gerardo Alanis is the chief executive of the City of Progreso, TX. Mr. Alfredo Espinosa is the City Manager of the City of Progreso, TX.

9.  Mayor Alanis and/or Mr. Espinosa are responsible for implementing the policies and decisions of the City of Progreso Board of Aldermen as the City's primary administrators.

10. Mayor Alanis and the Board of Aldermen are tasked with appropriating, reviewing, and implementing the City of Progreso Police Department's budget, policies, procedures, practices, and customs, including the acts and omissions related thereto, at issue in this lawsuit.

11. The City of Progreso Police Department was the sole entity responsible for the incarceration, safekeeping, medical treatment, and protection of those housed in the City of Progreso, TX's jail at the time of the events at issue in this lawsuit.

12. The City of Progreso, TX may be served by and through Mayor Gerardo Alanis at the Progreso City Hall, 300 FM 1015, Progreso, TX 78579, or wherever he may be found.

13. Defendant **ERNESTO LOZANO** is, on information and belief, a police officer employed by the City of Progreso, TX and at all times material herein was a police officer acting in the course and scope of his employment for the City of Progreso, TX. He may be served at his place of employment at the City of Progreso Police Department located at 810 N. Business FM 1015, Progreso, TX 78579, or wherever he may be found. Defendant Hinojosa is being sued in his individual capacity.

14. Defendant **JUSTIN LEE BECERRA** is, on information and belief, a police officer employed by the City of Progreso, TX and at all times material herein was a police officer acting in the course and scope of his employment for the City of Progreso, TX. He may be served at his place of employment at the City of Progreso Police Department located at 810 N. Business FM 1015, Progreso, TX 78579, or wherever he may be found. Defendant Becerra is being sued in his individual capacity.

15. Defendant **CESAR SOLIS** is, on information and belief, a police officer employed by the City of Progreso, TX and at all times material herein was a police officer (in particular, the Chief of Police), acting in the course and scope of his employment for the City of Progreso, TX. He may be served at his place of employment at the City of Progreso Police Department located at 810 N. Business FM 1015, Progreso, TX 78579, or wherever he may be found. Defendant Hinojosa is being sued in his individual capacity.

## IV.   JURISDICTION AND VENUE

16. The subject matter in controversy and damages sought are within the jurisdictional limits of this Court.

17. This Court has jurisdiction over this suit under 42 U.S.C. §1983 and supplemental jurisdiction over the state law claims contained therein, as they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.[1]

18. Venue is appropriate in the Southern District of Texas pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in Hidalgo County, Texas, which is in the McAllen Division of the Southern District of Texas.

## V.   FACTUAL BACKGROUND

19. The City of Progreso, TX is a city of approximately 6,000 people in the Rio Grande Valley of Texas, mere miles from the United States' border with Mexico. The sole responsibility for the protection and supervision of inmates housed in the City of Progreso, TX jail; the training and supervision of officers, jailers, and other jail staff; and the administration of the City of Progreso, Jail was (and perhaps, still is) vested in the statutory authority of the City of Progreso Police Department, an agency under the aegis of the City of Progreso. The responsibility and authority for establishing policies, procedures, training, rules, and all other customs of the City of Progreso officers, jailers, and employees is vested in Chief Alberto Rodriguez, the current Chief of Police, and was previously vested in Mr. Cesar Solis, the former Chief of Police, on information and belief, appointed by the Board of Aldermen and/or the Mayor the duly appointed Chief of Police of the City of Progreso.

### 26 February 2021 Arrest for Public Intoxication or Driving While Intoxicated

---

[1] 28 U.S.C. § 1367.

20. At approximately 5:40 PM on the evening of 26 February 2021, Defendant Ernesto Lozano conducted a traffic stop on a vehicle for alleged traffic violations in the city limits of the City of Progreso, TX.

21. Officer Lozano arrested the two male subjects in the vehicle, Mr. Joshua Stapleton and Mr. Michael Guerrero, without incident. Mr. Stapleton, the driver of the vehicle, was arrested, on information and belief, on the charge of public intoxication, believed to be upgraded to driving while intoxicated after his expiration. Mr. Guerrero was arrested on the charge of public intoxication.

22. During a search of the vehicle incident to the arrest of the two gentlemen, Defendant Lozano located what he suspected to be narcotics, ultimately charging both Mr. Stapleton and Mr. Guerrero with possession of a controlled substance.

23. Defendant Lozano then transported both gentlemen to the Progreso Police Department, where they were booked in on the charges at approximately 6:30 PM that evening.



(ILLUSTRATION A)[2]

---

[2] This illustration and all subsequent illustrations have in them file names in which the date and approximate time are embedded. Any references to time will correlate to the illustrations (e.g. In Illustration A, the pertinent part of the file name reads *063000PM.avi*, which represents 06:00:00PM)(emphasis added).

24. Upon entry into the Progreso City Jail, Mr. Stapleton, in the presence of Mr. Guerrero, informed Defendant Lozano that he was not feeling well. At this juncture, Mr. Stapleton received no medical treatment whatsoever.

25. As Mr. Stapleton was being put into the holding cell, he is clearly and visibly swaying and slightly unsteady on his feet. He removes his belt and clearly has a dark substance on the fingertips of both of his hands.



(ILLUSTRATIONS B-C)

26. During the ensuing minutes, Defendant Lozano comes to the cell on multiple occasions, to both speak to and address the gentlemen in the cell and, in one instance, provide them what looks like hand sanitizer.



(ILLUSTRATION D)

27. On information and belief, between roughly 7 PM and 8 PM, there is no footage capturing Mr. Stapleton or his condition.

28. At 8 PM, Progreso City Jail cameras capture Mr. Stapleton sitting on the floor of the cell.



(ILLUSTRATION E)

29. Twenty minutes after 8 PM, Defendant Becerra comes to the cell and takes a temperature reading from Mr. Stapleton and a gentleman believed to be Mr. Guerrero. In the video, Mr. Stapleton is swaying and generally unsteady on his feet.



(ILLUSTRATION F)

30. Following the temperature check, Defendant Lozano escorts a woman to an adjacent holding cell before passing back by Mr. Stapleton and observing him seated on the floor of the cell.





(ILLUSTRATIONS F-G)

31. Roughly a minute and a half after Defendant Lozano passes by after escorting the woman to the adjacent holding cell, Mr. Stapleton begins to fall forward slowly, remaining bent over his folded legs for nearly ten minutes time, while slowing rocking back and forth.

32. Eleven minutes or so thereafter, Defendant Becerra escorts two more women to the same cell adjacent the cell where Mr. Stapleton was being held, and where he can be seen still bent over in distress. The three women — Y.L., C.P., and D.G.G. — then had the tragic misfortune of being directly across from Mr. Stapleton as his tragic ordeal began to unfold.







(ILLUSTRATIONS H-J)

33. Mr. Stapleton then remains in this position for approximately the next hour. Ten or so minutes into that hours' time, Mr. Guerrero, noticing Mr. Stapleton's distress, removes his shirt and drapes it over Mr. Stapleton as a makeshift blanket.



(ILLUSTRATION K)

34. After another sixteen or so minutes pass, Mr. Guerrero walks to the door of the cell and appears to be looking for someone (presumably Progreso PD officers) to help his ailing friend.



(ILLUSTRATION L)

35. Another twenty-three or so minutes go by, Mr. Guerrero converses with the women in the adjacent cell. Once again, he goes to the cell to seek help for his friend, Mr. Stapleton, who has now been in this distressed, bent over position for nearly one hour.



(ILLUSTRATION M)



(ILLUSTRATION N)

36. After approximately seventy-one minutes have elapsed since a Progreso PD Officer has come to check on the inmates, Mr. Guerrero becomes even more demonstrably concerned, as he then begins to try and get Mr. Stapleton's attention, as he is seen touching his body and attempting to wake him.





(ILLUSTRATIONS N-O)

37. Minutes later, the man believed to be Mr. Guerrero then picks Mr. Stapleton up to where he is being held up by the man's hands. Mr. Stapleton appears to be unconscious or otherwise unable to hold himself up as he is held up. The women in the adjacent cell are now screaming for help for Mr. Stapleton, who is clearly in medical distress.



(ILLUSTRATION P)

38. The three women in the adjacent cell are looking on in shock and horror as Mr. Guerrero tries to rouse his friend. While they are screaming, one woman even climbs the bars to get a better vantage point to check and see whether Mr. Guerrero's efforts to rouse Mr. Stapleton are proving effective.





(ILLUSTRATIONS Q-R)

39. Finally, after well over an hour has elapsed since a Progreso PD officer has checked on the welfare of the inmates, Defendant Lozano enters the video and appears to be dialoguing with someone over his shoulder-mounted radio.



(ILLUSTRATION S)

40. At approximately 9:55 PM, Defendant Lozano and a gentleman presumed to be a firefighter or paramedic enter the cell to begin tending to Mr. Stapleton.



(ILLUSTRATION T)

41. Defendants Lozano and Becerra, two gentlemen presumed to be firefighters/EMTs, and an unknown officer all crowd the area, as the paramedics and Defendants Lozano and Becerra enter the cell. The firefighters/paramedics appear to be attempting chest compressions on Mr. Stapleton at this point.



(ILLUSTRATION U)

42. The firefighters/paramedics attempt life-saving chest compressions for several minutes. In the midst of their administration of chest compressions, Defendant Becerra administers Narcan to Mr. Stapleton. Defendant Solis approaches the cell and appears to be using a cell phone.



(ILLUSTRATION V)

43. As the three women in the adjacent cell look on in horror, Weslaco Fire/EMS wheels in a gurney, as one of the women excitedly talks to one of the firefighters, who appears to be attempting to calm her down.



(ILLUSTRATIONS W-X)

44. As the Weslaco firefighters load Mr. Stapleton onto the gurney to be removed from the cell, the three women, now visibly distraught and unnerved, are removed from their cell.



(ILLUSTRATIONS Y-Z)

45. At approximately 10:09 PM, Mr. Stapleton is wheeled out of the cell on a gurney by Weslaco firefighters.



(ILLUSTRATION AA)

46. Mr. Stapleton was transported to Knapp Medical Center in Weslaco, where the medical staff unsuccessfully attempted to save his life, determining that he had experienced cardiac failure, circulatory failure, and central nervous system failure. Mr. Stapleton was determined to have expired some time between 10:44 PM and 10:53 PM, when the critical care being administered ceased.

### Hidalgo County Sheriff's Office Investigation

47. Within half an hour of Mr. Stapleton's expiration, the Hidalgo County Sheriff's Office was in the ER at Knapp Medical Center to investigate the circumstances of Mr. Stapleton's death. The HCSO assigned Case No. 21-07070 to the investigation.

48. On 1 March 2021, Investigator Cantu interviewed Defendant Lozano in connection with Mr. Stapleton's death. Mr. Lozano was present with his attorney, Mr. David Willis.

22



(ILLUSTRATION BB)

49. Defendant Lozano discusses with Investigator Cantu how he came across Mr. Stapleton's vehicle that evening; the alleged traffic infractions he observed; his contact with Mr. Stapleton and Mr. Guerrero; and his arrests of Mr. Stapleton and Guerrero.

50. As he was detaining Mr. Stapleton and Mr. Guerrero, Defendant Solis observed Defendant Lozano conducting the traffic stop and came over to assist him.

51. After arresting Mr. Stapleton and Mr. Guerrero, Defendant Lozano conducted an inventory search of the vehicle, finding what he suspected to be prescription drugs.

52. Defendant Lozano told Investigator Cantu that he then booked Mr. Stapleton and Mr. Guerrero in the Progreso City Jail between 6:15 and 6:30 PM.

53. Defendant Lozano, in response to a question from Investigator Cantu, then explained that once a subject is booked in, he — and presumably other Progreso PD officers — then go to a room outside of the area of the cells to draft their reports.

54. Investigator Cantu asks specifically what the officers do once placing a subject in a cell. He replies that he "usually" goes to start writing his report, and then leaves the station if he gets a call.

55. Investigator Cantu then says, "[If] you get a call, you have to leave?" Defendant Lozano replies, "I have to leave." Investigator Cantu then asks, "But who stays there supervising the inmates?"

56. Defendant Lozano shakes his head from side to side to indicate that no one is looking after the inmates. Investigator Cantu asks "Nobody?" Defendant Lozano replies, "Maybe the fire department's looking at 'em."

57. Investigator Cantu replies, "If they're there?" Defendant Lozano replies, "Well, they're usually there. They have a TV in their kitchen with cameras."

58. Defendant Lozano then explains that he got a call for a reckless driver and then assisted Chief Solis with a traffic stop.

59. Defendant Lozano then explains that the traffic stop Chief Solis conducted was of three women, one of whom was arrested for DWI and the other two of whom were arrested for PI. These are the three women — Y.L., C.P., and D.G.G. — who observed Mr. Stapleton fighting for his life in cell #2.

60. After that, Defendant Lozano returned to the PD to continue his report, per his statement. Investigator Cantu then inquires about the room where Defendant Lozano was drafting his report, stating that there's a computer there where he can "kinda" monitor the inmates while drafting.

61. Investigator Cantu asks expressly whether there is sound. Defendant Lozano replies, "No. You have to yell." Investigator Cantu: "If somebody yells from the jail to where you're typing your report, can you hear it?" Defendant Lozano: "You should [be able to]."

62. Cantu then asks what happened next. Defendant Lozano explains that he heard the women yelling, saying that Mr. Stapleton had died. He then went into the area of the cells and found Mr. Stapleton laying on the floor.

63. Defendant Lozano then radioed EMS. The fire department personnel then began chest compressions.

64. Defendant Lozano then explains that Defendant Becerra administered the Narcan. Lozano checked Mr. Stapleton's pulse, not finding one.

65. Defendant Lozano then called Chief Solis to let him know what was going on. Lozano also told another officer to take the three women out of their cell.

## Autopsy Report & Import Thereof

66. The cause of death, as stated by then- Chief Medical Examiner, Dr. Adel Shaker, was noted as "combined drug toxicity," with the manner of death noted as "undetermined."

67. Dr. Shaker commissioned a toxicology report – completed by NMS Labs – in connection with his autopsy of Mr. Stapleton. That toxicology report indicated that Mr. Stapleton had ethyl alcohol (i.e. drinking alcohol), fentanyl, Narcan, Clonazepam, Alprazolam, Dihydro-codeine/Hydrocodol, Hydrocodone, Norfentanyl, and Mitragynine in his system at the time of his death.



(ILLUSTRATION CC)

68. Several of the substances found in Mr. Stapleton's blood were seized during the impound inventory of the vehicle he was driving, which should have given Defendant Lozano good reason to believe Mr. Stapleton had ingested those substances and thus needed to be kept under a watchful eye.

## VI.   POLICY OF MEDICAL CARE RENDERED BY CITY OF PROGRESO JAIL STAFF

### Progreso City Jail's Duty Under the Texas Administrative Code and the Texas Commission on Jail Standards Minimum Standards

69. On information and belief, the City of Progreso, TX is either incorporated as a Type B General-Law Municipality or a Home-Rule Municipality under the Texas Local Government Code.

70. Sec. 361.001 of the Local Government Code, concerning Municipal Jails, only applies to municipalities having a population of 17,500 or more.[3] The City of Progreso only had approximately 4,900 people according to the 2020 Census.[4]

71. Accordingly, its status as a Type B General-Law municipality or home-rule municipality affords it the authority to do anything that is not inconsistent with the Texas Constitution and to adopt a city charter. One such power it may exercise is the power to operate a city jail.

72. While the City of Progreso, TX jail is arguably not regulated by the Texas Commission on Jail Standards — which promulgates minimum jail standards to be followed as codified in the Texas Administrative Code — the requirements of that code are instructive as to what is reasonable and unreasonable with respect to the operation of the city jail.

73. The minimum standards require facilities to have the "appropriate number of jailers at the facility 24 hours a day…and an established procedure for documented, face-to-face observation of all inmates by jailers *no less than once every 60 minutes.*[5]

74. The Administrative Code mandates observation at least every 30 minutes where inmates are known to be assaulting, potentially suicidal, mentally ill, or who have demonstrated bizarre behavior.[6]

---

[3] Tex. Loc. Gov't Code Ann. §361.001.
[4] https://www.biggestuscities.com/city/progreso-texas.
[5] 37 Tex. Admin. Code §275.1 (2020)(emphasis added).
[6] *Ibid.*

75. This section of the Code mandates two-way voice communication capability available to inmates and jailers, admonishing that closed-circuit television may be used but not in lieu of "the required personal observation."[7]

76. Rule §275.4 concerns staffing requirements, requiring that facilities have a requisite number of jailers per specified number of inmates and that the required jailer "***shall provide documented visual inmate supervision not less than once every 60 minutes***."[8]

## The Policies, Customs, and/or Practices that Caused the Death of JOSHUA STAPLETON

77. <u>Policy No. 1:</u> The City of Progreso, TX had a policy, custom, or practice of allowing its officers to leave inmates unattended when responding in locations other than the police station. Defendant Ernesto Lozano made the statement concerning this policy, custom, or practice during his interview with Hidalgo County Sheriff's Office Investigator Cantu. **This policy, custom, and/or practice contributed to the death of JOSHUA STAPLETON because if the Defendants had not left the police station to respond to other calls, thus leaving the inmates unattended, Mr. Stapleton almost assuredly would have gotten medical assistance much faster, which would have saved his life.**

78. <u>Policy No. 2:</u> The City of Progreso, TX had a policy, custom, or practice of allowing the inmates in its custody to be potentially supervised by the City of Progreso Fire Department. Defendant Ernesto Lozano made the statement concerning this policy, custom, or practice during his interview with Hidalgo County Sheriff's Office Investigator Cantu. **This policy, custom, and/or practice contributed to the death of JOSHUA STAPLETON because when the Progreso PD Officers left to answer other calls, they were not sure whether Progreso Fire personnel were in fact monitoring Mr. Stapleton and the others in their custody, which led to NO ONE responding to repeated calls for assistance by the women in the cell adjacent to Mr. Stapleton.**

79. <u>Policy No. 3:</u> The City of Progreso, TX had a policy, custom, and/or practice of arresting drivers suspected of DWI (driving while intoxicated) with PI (public intoxication) instead,

---

[7] *Ibid.*
[8] 37 Tex. Admin. Code §275.4 (2014).

so the City could reap the revenue borne from those arrests rather than transporting them to the Hidalgo County Jail. **This policy, custom, and/or practice contributed to the death of JOSHUA STAPLETON because the jailers are responsible for the safe keeping of inmates by virtue of the Sheriff's duty under the Local Government Code: so, where medication has not been administered by the medical staff, jailers have an affirmative duty to provide it to the inmates under their supervision.**

80. <u>Policy No. 4:</u> The City of Progreso, TX had a policy, custom, and/or practice of not checking on inmates at least once each hour and ensuring their safety and health. **This policy, custom, and/or practice contributed to the death of JOSHUA STAPLETON because in the over seventy-one minutes where Mr. Stapleton's health condition rapidly declined, a single one of the Defendants observing him would have ensured he was administered life-saving treatment, preventing his death.**

81. The City of Progreso's adherence to these policies and decision not to implement a procedure to ensure round-the-clock supervision of inmates by peace officers constituted an unreasonably high risk for serious injury or death such as that suffered by Mr. Stapleton.

## **Failure to Train or Inadequate Training**

82. Defendant City of Progreso, TX is tasked with the training of peace officers acting as jail and medical staff in ensuring inmate safety and medical treatment; recognizing the signs and symptoms of drug overdose; and ensuring inmates are consistently monitored to ensure they have their medical needs met. This Defendant also has the charge of ensuring the jailers and medical staff in its employ are able to recognize the signs of a potential drug overdose and other major illnesses and acute issues.

83. Defendants Lozano, Becerra, and Solis never once sought to get Mr. Stapleton the medical care he desperately needed — which he both requested himself and which was being requested on his behalf by Mr. Guerrero and the women in the adjacent cell — because they were *nowhere* to be found during the over sixty minutes he was in the throes of his medical distress.

84. The training provided Defendants Lozano and Becerra was woefully inadequate and is essentially a failure to train them at all. Basic training in the importance of consistent

monitoring of inmates would have led them to prioritize the health and safety of the in-mates in their custody over responding to outside calls, and especially calls for low-level misdemeanors.

85.  The notion that an inmate could have a medical crisis, such as happened here; a violent interaction with another inmate; or virtually *any* other crisis which could cause them death or serious bodily injury and be solely on their own in responding to it despite being under the aegis of the Progreso Police Department defies logic is grossly imprudent.

86.  This inadequate training, both with respect to Defendants Lozano and Becerra, and the promulgation and perpetuation of these policies by Defendant Cesar Solis, was deliberately indifferent to the serious medical needs of JOSHUA STAPLETON and was a direct and proximate cause of his tragic death.

## VII. <u>CAUSES OF ACTION</u>

### COUNT ONE

### <u>Claims Under 42 U.S.C. § 1983 and the Fourteenth Amendment to the U.S. Constitution as to all Defendants</u>

87.  Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-86 above as though fully delineated below with respect to each cause of action.

### <u>Theory of Liability</u>

88.  Plaintiff advances an *episodic act or omission theory* in the present case.

89.  "When a Plaintiff pursues an episodic-acts-or-omissions theory, [s]he seeks to redress harms arising from "the particular act of one or more officials…"[9]

90.  "The test for establishing municipal liability in an episodic-act-or-omission case is settled:

---

[9] *Walker v. Pohlmann,* 2021 U.S. Dist. LEXIS 116991, at 14 (E.D. La. 2021) (citing *Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019)).

[A] plaintiffs must show (1) that the municipal employee violated [the pre-trial detainee's] clearly established constitutional rights with subjective deliberate indifference;…(2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference[; and (3)] either written policy statements, ordinances, or regulations or a widespread practice that is so…well-settled as to…fairly represent [] municipal policy that was the moving force behind the violation.[10]

91. Plaintiff contends that she prevails under an episodic act or omission theory, incorporating all paragraphs preceding and following this paragraph in proof thereof.

## Facts Supporting the Theory of Liability

92. The Defendants, in combination and individually, acting under color of law and pursuant to the policies, customs, and/or practices of the City of Progreso, TX, deprived JOSHUA STAPLETON of the rights and privileges afforded him under the Fourteenth Amendment to the United States Constitution, as well as those afforded under other laws of the United States.

93. This deprivation occurred when Defendants Lozano, Becerra, Solis, and the City of Progreso, TX, in combination and individually, failed to provide adequate and proper medical treatment to Joshua Stapleton; failed to provide him basic safeguards for his safety and safekeeping by keeping at least one peace officer present in the jail while there were inmates in the jail; by failing to protect him and keep him "safely" in the Progreso City Jail, and through deliberate indifference to his obvious, serious medical needs.

94. This deprivation violated 42 U.S.C. § 1983, the stated amendments to the U.S. Constitution, and related federal laws.

95. Through official, unofficial, and statutorily mandated policies, and with *deliberate, callous and conscious indifference* to Mr. Stapleton's constitutional rights, Defendants, in combination and individually, failed to practice and/or implement policies and/or did practice and/or implement policies, customs, and/or practices necessary to ensure the provision of

---

[10] *Id.*, at 25.

constitutionally adequate medical services to Mr. Stapleton during the time he was in the Progreso City Jail before his death.

96. Defendants, in combination and individually, instead followed, practiced, and implemented de facto policies, customs, and/or practices that prevented Mr. Stapleton from getting the medical treatment he needed to avoid succumbing to the combined drug toxicity which took his life.

97. Moreover, the conditions complained of and the direct and proximate cause of Mr. Stapleton's death were not reasonably related to any legitimate governmental objective. There is no legitimate governmental objective in failing to keep a single peace officer or jailer in a jail with several inmates; in failing to require peace officers or other law enforcement officers rather than firefighters and paramedics are actually ensuring the safekeeping of the inmates; nor in arresting drivers for PI rather than DWI to avoid taking them to the Hidalgo County Jail; and/or in failing to train jailers on the signs and symptoms of drug overdose and how to differentiate it from alcohol withdrawal or any other medical issue.

98. The elements of a cause of action under § 1983 against a governmental entity (the City of Progreso are as follows:

    a. Plaintiff is deprived of rights under the U.S. Constitution;

    b. Said deprivation is caused by a person acting under color of state law;

    c. The governmental entity adopted, or failed to adopt, a policy statement, ordinance, regulation, or decision adopted and promulgated by the governmental entity's law-making officers or by an official to whom the lawmakers delegate law-making authority or a persistent, widespread practice of officials or employees of the governmental entity which, though not authorized or officially adopted and promulgated, the policy is so common and well settled as to constitute a custom that fairly represents policy of the governmental entity; and

    d. The governmental entity was deliberately indifferent to the party's constitutional rights.

99. To prove a claim of deliberate indifference, a pretrial detainee is required to show "(1) the official was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and (2) the official actually drew that inference."[11]

100.   Deliberate indifference is proven when a plaintiff makes evident that officials "refused to treat him…or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[12]

101.   The "substantial risk" must be obvious in order to infer the official denying medical care had actual knowledge of the risk.[13] "Negligent or even a grossly negligent response to a substantial risk of harm" is insufficient to support an inference of deliberate indifference.[14]

102.   "[A] prison official's knowledge of a substantial risk of harm may be inferred if the risk was obvious."[15]

103.   A plaintiff may prove the official's requisite knowledge of a substantial risk in the customary manner any other question of fact may be proven, including via inference from circumstantial evidence.[16]

104.   Serious medical needs are those needs for which a treatment regimen has been recommended or those for which the need for care is so apparent that laymen (i.e., non-medical personnel) recognize that treatment is necessary.[17]

105.   The facts which substantiate that the elements of § 1983 have been met were previously delineated above, however they are summarized below:

   a. Mr. Stapleton told Defendant Lozano, on information and belief, that he did not feel well as he was booked into the jail and/or as he was placed into the holding cell;

   b. Failing to ensure at least one peace officer or jailer was present in the Progreso City Jail at all times;

---

[11] *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (quoting *Domino v. Tex. Dep't of Criminal Justice,* 239 F.3d 752, 755 (5th Cir. 2001).

[12] *Domino*, 239 F.3d at 756 (quoting *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985)).

[13] *Easter v. Powell,* 467 F.3d 459, 463 (5th Cir. 2006).

[14] *Thompson v. Upshur Cty.*, 245 F.3d 447, 458-59 (5th Cir. 2001).

[15] *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).

[16] *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

[17] *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006).

c.  Failing to ensure Defendants Lozano, Becerra, and Solis were trained on the recognition of impending drug overdose and/or associated medical conditions;

d.  Failing to do a visible observation of the inmates for over one hour;

e.  Having a policy, custom, or practice of leaving inmates unattended to answer calls outside of the Progreso City Jail/Police Station;

f.  Failing to ensure inmates are *actually* monitored at all times rather than supposing they "may be" monitored by non-law enforcement personnel like firefighters;

g.  Having a policy of arresting drivers for PI rather than DWI to ensure they are booked into the City Jail rather than being transported to the Hidalgo County Jail; and

h.  Continued such practices of improper policies, customs, and/or practices.

106.    Defendants Lozano, Becerra, and Solis, in combination and as individual defendants, as applicable, intentionally and with deliberate indifference, deprived Mr. Stapleton of his clearly established federal constitutional rights, including but not limited to:

a.  Mr. Stapleton's right to reasonably safe conditions of confinement;

b.  Mr. Stapleton's right to receive proper medical services and medications for any serious medical conditions; and

c.  Mr. Stapleton's right to be free from cruel and unusual punishment.

107.    Defendants Lozano, Becerra, and Solis, and the City of Progreso, TX, each had an affirmative duty to make sure that Mr. Stapleton received the medical treatment he so desperately needed, yet they all failed to ensure that happened. All of the Defendants' actions far exceeded mere negligence, as the staff was made aware of his medical needs but neglected to follow reasonable procedures to ensure he received treatment, including merely keeping someone present on the premises to even ascertain he needed treatment; at least two of the Defendants **observed** him in medical distress and neither assisted him nor got him medical treatment. His serious medical needs were obvious to his cellmate, Mr. Guerrero, as well as to the three women in the adjacent cell who watched as Mr. Stapleton agonized for over an hour.

108.    Notwithstanding his obvious needs, each defendant consciously elected not to ensure that Mr. Stapleton received any, let alone adequate, medical treatment.

109.    Defendants, in combination and individually, directly and proximately caused the deprivation of Mr. Stapleton's rights to due process of law and rights to be free from cruel and unusual punishment by subjecting him to confinement without the life-saving medical care his body so desperately needed. These dangerous, heinous, and callously agonizing conditions resulted in Mr. Stapleton's death. The actions of the Defendants were singularly, or in combination, a legal cause of Mr. Stapleton's death.

110.    At all times material hereto, the City of Progreso, TX was in control of and operation of the Progreso City Jail; the City of Progreso, TX and the individual Defendants' mandate to "safely" keep the inmates within the course and scope of their employment and in furtherance of the duties of their offices and/or employment.

111.    Mr. Stapleton was in serious need of medical treatment; a fact of which Defendants were well aware, as he both told them he needed treatment and was arrested with a myriad of controlled substances in his possession and obvious signs of intoxication on display. Notwithstanding this knowledge, the Defendants willfully and maliciously refused to get Mr. Stapleton medical treatment or even leave a mechanism for him or others to request help for over an hour.

112.    The Defendants' constitutional duty was breached when they failed to provide basic human and medical needs to inmates in their custody, acting with deliberate indifference and subjective recklessness to Mr. Stapleton's obvious medical requirements, of which they had subjective knowledge.

113.    Non-medically trained individuals – at least *four* inmates – clearly observed that Mr. Stapleton needed medical help.

114.    The Defendants, in combination and individually, made the conscious decision, in adherence to the policies, customs, and/or practices of the City of Progreso, TX and/or their woefully inadequate training, to fail to provide Mr. Stapleton with medical treatment, as required by the United States Constitution.

## COUNT TWO

### Fourth Amendment § 1983 *Monell* Claim against the City of Progreso, TX

115. Plaintiff incorporates by reference all of the foregoing and further alleges the following:

116. The conduct of Defendants Lozano, Becerra, and Solis constituted deliberate indifference to Mr. Stapleton's obvious, serious medical needs.

117. At all material times, Defendants Lozano, Becerra, and Solis acted under color of state law, as agents of the City of Progreso, Texas.

118. Defendants were acting in the course and scope of their employment as peace officers employed by the City of Progreso, TX during the time that they failed to supervise the inmates in the City of Progreso, TX jail and refused to treat Mr. Stapleton's serious medical needs.

119. Former Chief of Police, Defendant Cesar Solis, was the Defendant City of Progreso, TX's policymaker for all matters related to the City of Progreso Police Department, having been delegated the policymaking authority by the City of Progreso Board of Aldermen.

120. Consequently, the City of Progreso, TX had or ratified the following policies, customs, and/or practices in place when Mr. Stapleton suffered his agonizing and untimely death:

    a. Allowing its officers to leave inmates unattended when responding in locations other than the police station;

    b. Allowing the inmates in its custody to be potentially supervised by the City of Progreso Fire Department.;

    c. Arresting drivers suspected of DWI (driving while intoxicated) with PI (public intoxication) instead, so the City could reap the revenue borne from those arrests rather than transporting them to the Hidalgo County Jail;

    d. not checking on inmates at least once each hour and ensuring their safety and health;

121. Defendant City of Progreso, TX command staff, on information and belief, consistently reviewed such policies and found no issue with them. The City of Progreso, TX approved and encouraged such conduct, as such conduct was also participated in by the former Chief, its policymaker.

122. Defendants Lozano, Becerra, and Solis, in adherence to an in conformity with the above-listed policies, all of which coalesced to cause the divestiture of Mr. Stapleton's constitutional rights.

123. Former Chief Solis and his command staff were all deliberately indifferent to the natural by-products of these policies, practices, and/or customs, of which he was aware, authorized, ratified, accepted, exacerbated, and encouraged, instead of rectifying them and ensuring further civilians were not hurt by them.

124. Former Chief Solis was actually aware of facts from which any reasonable policymaker could draw the inference that a substantial risk of serious harm and violation of constitutional rights existed, and actually drew that inference.

125. Former Chief Solis knew it was clear that a constitutional violation was a very likely outcome of the ratification, adoption, and promotion of these policies.

126. Former Chief Solis and his command staff knew or should have known that allowing its officers to leave inmates unattended when responding in locations other than the police station; allowing the inmates in its custody to be potentially supervised by the City of Progreso Fire Department; arresting drivers suspected of DWI (driving while intoxicated) with PI (public intoxication) instead, so the City could reap the revenue borne from those arrests rather than transporting them to the Hidalgo County Jail; and not checking on inmates at least once each hour and ensuring their safety and health would cause City of Progreso PD employees to routinely and continuously violate the constitutional rights of Progreso residents and others with the unfortunate luck of crossing paths with City of Progreso, TX peace officers. Former Chief Solis continued operating under these policies in spite of his knowledge of the deficiencies of his training program and supervision of peace officers.

127. Each of the policies listed, *supra*, was actually known, constructively known, and/or ratified by the City of Progreso and its policymakers, including Former Chief Solis, and was promulgated with deliberate indifference to Mr. Stapleton's rights under the United States Constitution and the rights of all others making contact with the City of Progreso, TX peace officers. The policymakers of the City of Progreso, TX PD knew that their officers would continuously be put in situations wherein constitutional violations like those aforementioned in this complaint would occur. These policies made it highly likely that such constitutional violations as those previously described would occur, under color of state law.

128. All previously mentioned policies were a moving force of Mr. Stapleton's constitutional deprivations and injuries, causing him to lose his life tragically and unnecessarily.

## VIII. THE ESTATE OF JOSHUA STAPLETON AND JACQUELINE LOUISE STAPLETON'S SURVIVAL STATUTE AND WRONGFUL DEATH DAMAGES

129. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-128 above as though fully delineated below with respect to each cause of action.

130. Plaintiff DAWN STAPLETON, as personal representative of the Estate of Joshua Stapleton, Deceased, brings this suit to recover just compensation for the damages suffered as the result of the untimely death of and loss of her brother, Joshua Stapleton, as provided for by Texas Civil Practive and Remedies Code § 71.001, *et seq.*, the "Texas Wrongful Death Act." Ms. Dawn Stapleton and Ms. Jacqueline Louise Stapleton are the statutory beneficiaries of Joshua Stapleton, who, on information and belief, died without a will. Ms. Stapleton and Ms. Mitcham are the surviving sibling and mother, respectively, of Mr. Stapleton. There is no court-appointed representative of the Estate of Joshua Stapleton, there is no pending administration of the Estate of Joshua Stapleton, and no administration of the estate is necessary.

131. As a proximate result of the above acts and/or omissions on the part of Defendants, Joshua Stapleton endured an avoidable and agonizing death, dying as a proximate result of these acts and/or omissions of Defendants collectively. Ms. Stapleton and Ms. Mitcham sue to recover just compensation for Joshua Stapleton's conscious pain and suffering, mental anguish, and reasonable funeral expenses.

132. As a promixate result of the above acts and omissions of Defendants, Ms. Stapleton and Ms. Mitcham have suffered pecuniary loss as a result of the untimely death and loss of their brother and son, respectively, including loss of care, maintenance, support, services, advice, counsel, and contributions of a pecuniary value that they would in reasonable probability have received from Joshua Stapleton during his lifetime, had he lived. Ms. Stapleton and Ms. Mitcham have suffered severe trauma, mental depression, anguish, grief, and sorrow as a result of the untimely death and loss of their brother and son, respectively. They have suffered all of these damages in the past and are likely to continue to suffer for a long time in the future.

133. For these losses and the untimely death of Joshua Stapleton, Ms. Stapleton and Ms. Mitcham seek damages in a sum in excess of the minimal jurisdictional limits of the

Court, both prejudment and post-judgment interest as allowed by law, all costs of Court, and all other relief, both in law and in equity, to which they may be justly entitled.

## IX. QUALIFIED IMMUNITY UNDER § 1983

134. City Employees may be entitled to qualified immunity as to their individual liability. That immunity is waived, however, upon a showing by the Plaintiff that:

    a.  The individual's acts deprived the party of constitutional rights under color of law;

    b.  The deprived rights were clearly established, constitutional rights in existence at the time of the acts complained of; and

    c.  Such acts were not objectively reasonable under the circumstances, that is, no reasonable official could have believed at the time that the conduct was lawful.

135. Defendants Lozano, Becerra, and Solis, persons acting under color of state law, enforcing the policies, customs, and/or practices of the City of Progreso, TX, and/or by their allowing officers to leave inmates unattended when responding in locations other than the police station; allowing the inmates in its custody to be potentially supervised by the City of Progreso Fire Department; arresting drivers suspected of DWI (driving while intoxicated) with PI (public intoxication) instead, so the City could reap the revenue borne from those arrests rather than transporting them to the Hidalgo County Jail; and not checking on inmates at least once each hour and ensuring their safety and health, deprived Mr. Stapleton of his civil liberties, without due process of law, by failing to provide him medical treatment during his incarceration at the Progreso City Jail.

136. No reasonable official could have believed that failing to provide Mr. Stapleton with his needed medical treatment was lawful, let alone humane. "Any reasonable officer should have realized that [Mr. Stapleton's] conditions of confinement offended the Constitution."[18]

137. Defendants Lozano and Becerra, despite both observing obvious signs of his medical needs and distress, failed to ensure Mr. Stapleton received medical care.

---

[18] *Taylor v. Riojas*, 141 S.Ct. 52, at 54 (2020).

138. It is per se inadequate medical care to elect not to provide any care to an inmate who is clearly exhibiting signs of intoxication and about whom you have strong circumstantial evidence may be intoxicated on a great number of substances,.

139. The acts of the Individual Defendants were unreasonable under the circumstances when viewed objectively.

140. The Individual Defendants were deliberately indifferent to the excessive risk of harm to Mr. Stapleton in their failures to act and in the actions they did take. Such acts and failures deprived Mr. Stapleton of and violated his clearly established constitutional rights and were not objectively reasonable.

141. The acts of the City of Progreso, TX, and the Individual Defendants clearly violated established rights under the Constitution and statutes. A reasonable person would have known that Mr. Stapleton's constitutional rights of life and liberty and protection against cruel and unusual punishment were enshrined by the Fourteenth Amendment to the Constitution and that their actions were violative of such rights.

142. The acts of Defendants were salient in their wrongness and grossly offensive. Only an officer violating the law or who is plainly incompetent would perform such an act as not providing Mr. Stapleton his life-sustaining medical treatment. Thus, Defendants are liable to Plaintiff for the damages caused by their actions, which were the direct, proximate, and producing causes, in each Count alleged above respectively, of Mr. Stapleton's death.

## X. DAMAGES

143. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-142 above as though fully delineated below with respect to each cause of action.

144. As a result of Defendant's statutory and constitutional violations, Plaintiffs have suffered serious and substantial damages and injuries for which they request the award of the following categories of damages:

   a. Mental anguish, including emotional pain, torment, and suffering that Plaintiff experienced from the death of her son;

   b. The pecuniary loss of care, maintenance, support, services, advice, counsel, and reasonable contributions of pecuniary value that Plaintiff has sustained and lost due to the death of her son.

    c.   The loss of society and companionship representing the positive benefits flowing from the love, comfort, companionship and society that Plaintiff has sustained in reasonable probability due to the death of her son;

    d.   Loss of inheritance sustained by Plaintiff as a result of the death of her son;

    e.   Physical pain and suffering experienced by JOSHUA STAPLETON for the duration of his confinement leading up to his death, recoverable by his Estate;

    f.   Mental anguish, including emotional pain, torment, and suffering that JOSHUA STAPLETON endured during his confinement leading up to his death, recoverable by his Estate;

    g.   Burial expenses, if any, incurred by JOSHUA STAPLETON's Estate; and

    h.   These damages should be separately considered by the jury. A fair and impartial jury should listen to the evidence and award an amount for each element of damages that is fair and just, based on the evidence.

145. Plaintiff seeks monetary relief over $1,000,000 and for judgment of all the other relief to which they deem themselves entitled.

146. Plaintiff seeks to recover reasonable attorney's fees and costs of court, and hereby requests the award of exemplary damages, pursuant to 42 U.S.C. § 1983.

## XI. ATTORNEY'S FEES AND COSTS

147. If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. §1988.

## XII. RELIEF REQUESTED

148. The preceding factual statements and allegations are incorporated by reference.

149. For these reasons, Plaintiff prays for judgment against Defendants, any or all of them, for the following:

    a.   Actual damages;

    b.   Pre-judgment and post-judgment interest;

    c.   Attorney's fees and expenses;

    d.   Punitive damages against the Individual Defendants;

    e.   Costs of Court; and

    f.   Such other and further relief as the Court deems proper.

## XIII. JURY DEMAND

150. Plaintiff respectfully requests a jury trial in this matter.

## XIV. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that judgment be rendered against all Defendants, for an amount in excess of the jurisdictional minimum of this Court. Plaintiffs further pray for all other relief, both legal and equitable, to which they may show themselves justly entitled. Plaintiffs respectfully request that Defendants be cited to appear and answer herein, and that upon final trial thereof, the Court award the relief against all Defendants, jointly and severally.

Respectfully Submitted,

**WEBB CASON & MANNING, P.C.**
710 Mesquite Street
Corpus Christi, Texas 78401
Telephone:    (361) 887-1031
Facsimile:    (361) 887-0903

_____
MATTHEW S. MANNING
State Bar No.: 24075847
General Correspondence Email:
matt@wcctxlaw.com
PARKER S. WEBB
State Bar No.:  24085648
General Correspondence Email:
parker@wcctxlaw.com
CHARLES C. WEBB, JR.
State Bar No. 21039500
General Correspondence Email:
charlie@wcctxlaw.com
BENNY M. CASON
State Bar No. 03969250

General Correspondence Email:
benny@wcctxlaw.com
PATRICK L. BEAM
State Bar No.: 01955560
General Correspondence Email:
serviceplb@pbeamlaw.com
STEPHEN J. CHAPMAN
State Bar No.: 24001870
General Correspondence Email:
steve@wcctxlaw.com
**\* E-Service Email: service@wcctxlaw.com**
**\*E-Service is only accepted at the above**
**designated e-service e-mail address.**
ATTORNEYS FOR PLAINTIFFS