IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| **DAWN STAPLETON, as a personal Representative of the Estate of Joshua Stapleton and Jaqueline Louise Stapleton** § § § § § | | |
| **Plaintiffs** § § | | |
| Vs § § | Civil Action No. 7:23-CV-00069 | |
| **ERNESTO LOZANO, JUSTIN LEE BECERRA, CESAR SOLIS AND, THE CITY OF PROGRESSO, TX et. al** § § § § § | | |
| **Defendants** § | | |

**DEFENDANT CITY OF PROGRESO'S
RULE 12 MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM FOR RELIEF**
════════════════════════════════════════════════════════════════

May It Please The Court:

NOW COMES DEFENDANT CITY OF PROGRESO (hereafter "Defendant" or "City") and files this Motion pursuant to Rule 12(b)(6), the controlling precedent set forth below, and would respectfully show the Court as follows.

### I. NATURE OF THE CASE

1. Plaintiffs allege that the City of Progreso and Individual Defendant employees of the City, violated Josh Stapleton's Fourth and Fourteenth Amendment rights based on his in-custody death on February 26, 2021. *See Dkt. 5.* Defendant City of Progreso will show that Stapleton was not deprived of a constitutional guarantee pursuant to an official municipal policy, and, as a result, the City is entitled to dismissal under Rule 12(b)(6).

## II. FACTS ALLEGED IN PLAINTIFFS' FIRST AMENDED COMPLAINT

2.  On February 26, 2021, Officer Lozano arrested Stapleton for Driving While Intoxicated. *Dkt. 5* ¶¶ 21, 49, *Illustration CC*; Defs.' Ex. "A" (Stapleton Police Report).[1] Stapleton was in the car with his friend, Michael Guerrero, who was arrested for Public Intoxication. *Dkt. 5* ¶ 21. Lozano found what he believed to be prescription drugs in the car and charged both Stapleton and Guerrero with possession of a controlled substance. *Dkt. 5* ¶¶ 21-22, 51; Dts.' Ex "A." Both men were taken to the City jail. On arrival, Stapleton allegedly told Lozano that he was "not feeling well." *Dkt. 5* ¶ 24. Afterwards, at approximately 6:36 p.m., Stapleton walked unassisted to a cell where he was held with Guerrero. *Dkt. 5* ¶¶ 23-25, *Illustrations A-C*. Lozano came back to the cell several times and just before 7:00 p.m., offered Stapleton hand sanitizer, which Stapleton walked to the cell door to receive. *Dkt. 5* ¶ 26, *Illustration D*.

3.  At approximately 8:20 p.m., Stapleton stood up and walked unassisted to the cell door so that Officer Becerra could take his temperature. *Dkt. 5* ¶ 29, Illustration F[2]; Dts.' Ex. "B" (full video of Illustration F). Over the next twenty-five minutes or so, both Officer Lozano and Officer Becerra passed Stapleton multiple times while escorting three women arrested for possession of a controlled substance to a nearby cell. *Dkt. 5* ¶ 30-32, Illustration F-J.[3] There are no allegations that Stapleton was ever violent, delusional, or attempting to harm himself. Stapleton was sitting upright at 8:31 p.m. when Lozano last passed him and sat with his head near his lap at approximately 8:42

---

[1] Plaintiffs have incorporated and depicted excerpts of various documents and videos on which are central to the claim in their First Amended Complaint. The court may consider "[d]ocuments that a defendant attaches to a motion to dismiss ... if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).
[2] Plaintiffs have two different photos that are both identified as "Illustration F." The photo cited here appears on page 10.
[3] Plaintiffs have two different photos that are both identified as "Illustration F." The photo cited here appears on page 11.

p.m. when Becerra walked by. *Id*. Lozano did not leave the jail after the women were booked. *Dkt. 5 ¶ 59-60*.

4.     For approximately the next hour, Guerrero stood just feet away from Stapleton and appears to have had a casual conversation with the women in the neighboring cell. Around 9:50 p.m., Guerrero kneeled next to Stapleton and appeared to check on him. *Dkt. 5 ¶ 36*, Illustration N-O; Defs.' Ex. "C" (full video of Illustration N and O). At approximately 9:54 p.m., Guerrero approached the cell door and appeared to yell for help. Defs.' Ex. C. at 1:11:03. Just **15 seconds later**, Officer Lozano responded and radioed for assistance. *Id*. at 1:11:18.

5.     Approximately one minute later, Stapleton began receiving emergency medical treatment from firefighters who were stationed in the building. *Dkt. 5 ¶¶ 40-42*, Illustrations T-X. Fire fighters sometimes monitor the inmates when officers respond to calls. *Dkt. 5 ¶¶ 78-105*. All fire fighters in Texas have emergency medical training that is certified by the Texas Department of Health and Human Services, or a comparable organization. Tex. Admin. Code § 423.1. Police officers are not required to have similar training. *See id*. at § 217.1. Stapleton was administered NARCAN before he was transported to the hospital.

6.     Stapleton was transported to the hospital at approximately 10:09 p.m. *Dkt. 5, ¶46*, Illustrations AA. He died sometime between 10:44 p.m. – 10:53 p.m. *Dkt. 5 ¶ 46*. The cause of death was "combined drug toxicity." Stapleton's toxicology report reflected the presence of alcohol, fentanyl, Narcan, Clonazepam, Alprazolam, Dihydro-codeine/Hydrocodol, Hydrocodone, Norfentanyl, and Mitragynine. *Dkt. 5 ¶¶ 66-67*.

7.     Plaintiffs bring causes of action under Section 1983 for alleged Fourth and Fourteenth Amendment violations, advancing the former under a theory of episodic acts or omissions. *Dkt. 5*

¶¶ 88-91. In addition to the alleged Constitutional injuries, Plaintiffs seek damages under the Texas survival and wrongful death statutes.

### III. RULE 12 STANDARD

8. The issue before the Court is whether Plaintiff alleges facts sufficient to survive the City's motion to dismiss under Rule 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the formal sufficiency of the statement of claim for relief in a plaintiff's complaint. *Doe Hillsboro ISD*, 81 F.3d 1395, 1401 (5th Cir. 1996). To avoid dismissal, a complaint must contain sufficient factual allegations on every material point necessary to sustain a recovery, or allegations from which an inference may be drawn that evidence on these material points will be introduced at trial. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

9. The factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This does not require detailed factual allegations, but it does require "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. In other words, the plaintiff's factual contentions must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Culberson v. Lykos*, 790 F.3d 608, 616 (5th Cir. 2015).

10. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions" are insufficient. *Taylor v. Books A Million*, 296 F.3d 376, 378 (5th Cir. 2002) (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993)). The court is not required to

"conjure up unpled allegations or construe elaborately arcane scripts" to save an ill-pled complaint. *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (citations omitted).

11. To state a claim for liability against the City under Section 1983, Plaintiff must plead specific facts stating the existence of (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom. *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see also Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).

12. These three requirements "are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). While a plaintiff need not offer proof of her allegations to survive a motion to dismiss, she still must plead specific facts—not conclusory suppositions—plausibly supporting each element. *Iqbal*, 556 U.S. at 678; *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997).

13. Plaintiffs' First Amended Complaint fails to satisfy this threshold pleading requirement.

## IV. ARGUMENT AND AUTHORITIES

14. Despite its considerable length, Plaintiffs' First Amended Complaint, does not state a claim of municipal liability.

**A.     Municipal Liability**

15. Plaintiffs allege violations of the Fourth and Fourteenth Amendments, which they bring against the City under 42 U.S.C. §1983. A municipality like the City of Progreso is only liable for "acts directly attributed to it through some official action or imprimatur." *Peterson v. City of Fort Worth,* 588 F.3d 838, 847 (5th Cir. 2009). There is no *respondeat superior* liability. *See Monell*, 436 U.S. 658 at 694. As a result, a plaintiff bringing claims under Section 1983 must "show the

deprivation of a federally protected right caused by action taken pursuant to an official municipal policy." *Valle v. City of Houston,* 613 F.3d 536, 541 (5th Cir. 2010).

16. Under *Monell,* a governmental entity can be found liable under Section 1983 only when the execution of the government's policy or custom inflicts the constitutional injury. *See Monell,* 436 U.S. at 690-8; *Prairie v. City of Arlington*, 957 F.2d 1268, 1277 (5th Cir. 1992), *cert. denied*, 506 U.S. 973 (1992). Thus, Plaintiffs must allege with specificity and particularity that their claims are based on defendant's official policy, not the policy of an individual official or officer. *See Bennett v. City of Slidell,* 728 F.2d 762, 769 (5th Cir.1984). "The fact that a particular official—even a policy-making official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481-82 (1986).

**B.     Plaintiffs fail to plead that Stapleton was deprived of any rights during the initial 4th Amendment seizure; thus, the 4th Amendment claim must be dismissed.**

17. Plaintiffs' Fourth Amendment claim fails because Stapleton was a pre-trial detainee to whom the Fourth Amendment protections were inapplicable. An arrestee's Fourth Amendment protections related to medical care end when he becomes a pretrial detainee. Once the initial seizure concludes, the right to medical care derives from the Fourteenth Amendment. *Kelson v. Clark*, 1 F.4th 411, 417 (5th Cir. 2021) (*citing Nerren v. Livingston Police Dep't*, 86, F.3d 469, 473 (5th Cir. 1996)).

18. Here, the only alleged harm from denial of medical care alleged in Plaintiffs' First Amended Complaint occurred while Stapleton was in Progreso City Jail, and there are allegations that he was denied medical care during the initial traffic stop, his arrest, or any time prior to being detained at the Progreso City Jail. *Dkt. 5*. As such, Stapleton was not entitled to Fourth Amendment protections and claims brought thereunder should be dismissed.

**C.    Plaintiffs have failed to plead an official City policy that was adopted with deliberate indifference to the Constitutional rights of arrestees was the moving force behind the alleged Fourteenth Amendment violations.**

19.    Section 1983 constitutional claims alleged by or on behalf of pretrial detainees fall into one of two categories: (1) claims arising from the episodic acts or omissions of individual county officials; or (2) claims arising from the general conditions of confinement in the jail or prison. *See Shepherd v. Dall. Cnty.,* 591 F.3d 445, 452 (5th Cir. 2009). Here, Plaintiffs allege that theirs is an episodic acts or omissions claim. Dkt. #5 ¶ 88 ("Plaintiff advances an episodic act or omission theory in the present case.").

20.    Plaintiffs allege that the individual Defendants failed to conduct jail safety checks at least once each hour; left inmates unattended when responding in locations other than the police station; allowed inmates to be monitored by City of Progreso Fire Department employees; and arrested drivers suspected of driving while intoxicated with public intoxication instead, so the City could reap the revenue borne from those arrests rather than transporting them to the Hidalgo County Jail. *Dkt. 5, ¶ 120a.-120d*. Plaintiffs draw the unsupported conclusion that these actions amount to Constitutional violations caused by an official City policy.

**Plaintiffs fail to adequately plead the existence of an official City policy**

21.    An official policy for Section 1983 purposes may be shown by either identifying a written policy statement, ordinance, or regulation announced by an official policymaker, or pleading facts showing a widespread practice so common and well-settled that it can be said to fairly represent the governmental entity's official policy. In rare cases, a policy may also be shown where a person with "final policymaking authority" performed the specific act that forms the basis of her claim or approved a subordinate's decision and the unconstitutional basis for it. *Zarrow v. City of Wichita Falls*, 614 F.3d 161, 168 (5th Cir. 2010); *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847

(5th Cir. 2009); *Webb v. Town of Saint Joseph*, 925 F.3d 209, 215 (5th Cir. 2019) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986)); *Peterson*, 588 F.3d at 848 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

22. Further, to succeed in holding a municipality liable under these standards, the plaintiff must also show that the policy or custom was adopted or maintained by the municipality with objective deliberate indifference to the plaintiff's constitutional rights. *See Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999).

23. Here, Plaintiffs identify four policies to which they anchor their municipal liability theory:

> "Allowing its officers to leave inmates unattended when responding in locations other than the police station; [] Allowing the inmates in its custody to be potentially supervised by the City of Progreso Fire Department; [] Arresting drivers suspected of DWI (driving while intoxicated) with PI (public intoxication) instead, so the City could reap the revenue borne from those arrests rather than transporting them to the Hidalgo County Jail; [] not checking on inmates at least once each hour and ensuring their safety and health."

Dkt. #5, ¶ 120.

24. Plaintiffs aver that these are official policies established by way of a pattern or practice that has been ratified by the City. *See* Dkt. 5 ¶72; ¶¶73-76. Yet, **Plaintiffs have failed to identify a single other similar incident**, which forecloses this theory.

25. It is well established that "[i]n order to find a municipality liable for a policy based on a pattern, that pattern must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017). "Showing a pervasive pattern is a heavy burden." *Sanchez v. Young County*, 956 F.3d 785, 793 (5th Cir.), cert. denied, 141 S. Ct. 901 (2020). "**A pattern requires similarity, specificity, and sufficiently numerous prior incidents**," based on the context of the incident and the City's police force. *Davidson*, 848 F.3d at 396–97. Here, Plaintiffs have done nothing more

than make the conclusory assertion that the pattern or practice exists but have failed to demonstrate same by identifying other similar incidents. As a result, Plaintiffs have not shown an official municipal policy and their claims against the City cannot stand. Dismissal is proper.

**Plaintiffs fail to plead that any policy was adopted with deliberate indifference to Constitutional protections.**

26. Even if Plaintiffs had shown an official City of Progreso policy—which they have not—they have failed to plead any basis on which the Court could draw the inference that the policy was adopted with deliberate indifference to the constitutional rights of arrestees. As stated above, they have not identified a single other instance that would have put policymakers on notice that the alleged official policy threatened constitutional protections.

27. Plaintiffs only argument on this point appears to be that because the jailers were not following the Texas Commission on Jail Standards ("TCJS") regarding supervision and observation of inmates, the City policy (if there was one) must have been adopted with deliberate indifference to inmates' constitutional rights. Dkt. 5, ¶¶ 69-76. Setting aside that the deliberate indifference in this context must be on the part of the *policymakers*, Plaintiffs goes on to correctly point out that the standards are not even applicable to small cities like Progreso. *Id*. Plaintiffs simply have not shown an official municipal policy that was adopted with deliberate indifference to Fourteenth Amendment guarantees.

**Plaintiffs fail to plead facts showing that the alleged policies were the moving force behind the alleged Constitutional violations.**

28. Further, the pleaded facts do not show that the alleged policies were the moving force behind the injury. For instance, even if the City of Progreso had adopted a policy of leaving inmates in the care of the Fire Department, Plaintiffs cannot tie that to the alleged failure to provide medical care because fire fighters, unlike police officers, are *actually certified in emergency medicine. Cf.*

Tex. Admin. Code § 423.1 *with* § 217.1. In other words, the policy about which Plaintiff complains provided more protections against inadequate medical care, not less.

29.    Another example of their failure to provide a nexus between the constitutional deprivation and alleged policy is in their claim that it is the official policy of the City for officers to leave the jail in order to answer calls. Even if this were an official policy adopted with deliberate indifference to detainees' rights, it did not cause the harm here because Plaintiffs plead that Lozano was, in fact, at the jail during the 71 minutes that Stapleton's condition declined. Plaintiffs' own Complaint and illustrations within show that Officer Lozano was at the police station and responded immediately to other inmates' call for help. *Dkt. 5 ¶38-41; Dkt. 5, pg 17, Illustrations Q-R; pg. 18 Illustration S.*

30.    Plaintiffs have not and cannot meet their burden to establish an official municipal policy was the moving force behind the alleged constitutional violation. Dismissal is proper.

**Plaintiffs fail to plead facts showing that a Constitutional violation actually occurred.**

31.    Finally, while Plaintiffs do not plead and satisfy the *Monell* standard for municipal liability as laid about above, even beyond this, Plaintiffs fail to plead sufficient facts showing an actual Fourteenth Amendment violation. A Fourteenth Amendment claim requires a showing, and thus adequate pleading, of deliberate indifference to a substantial risk of serious harm. That is, Plaintiffs must demonstrate that the officers "knew of and disregarded an excessive risk to the inmate's health or safety." *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001). An official acts with subjective deliberate indifference if:

    (1) He knows that the inmate faces a substantial risk of serious bodily harm; and

    (2) He disregards that risk by failing to take reasonable measures to abate it.

*Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

32.     To prove deliberate indifference, Plaintiffs must show that the state official knew of and disregarded an excessive risk to the inmate's health or safety. Plaintiffs must show both that the employee was aware of facts from which an inference of excessive risk to the prisoner's safety could be drawn and, *that the employee actually drew an inference that such potential harm existed*. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). As the Court noted in *Gobert*, deliberate indifference is an extremely high standard to meet. *Gobert*, 463 F.3d at 346.

33.     Plaintiffs have failed to adequately plead facts in support of a 14th Amendment claim showing deliberate indifference on the part of any City employee or official. Plaintiffs merely plead, as to City employees/individual Defendants, entirely conclusory statements regarding their alleged specific knowledge of a substantial risk of an overdose to decedent Stapleton; and that they disregarded his need for medical attention. *Dkt. 5*. In simply throwing in conclusory statements, Plaintiffs' Complaint is devoid of any facts showing that the officers were each aware of facts from which they could have drawn the conclusion that a substantial risk of harm from overdosing existed and that one or more of the officers actually drew that conclusion. As a result, Plaintiffs fail to adequately plead a Constitutional violation, as necessary to state a claim against the City. Dismissal is proper.

**D.      Plaintiffs have failed to plead facts showing a plausible failure-to-train claim.**

34.     Plaintiffs allege that the City is tasked with training of peace officers acting as jail and medical staff in ensuring inmate safety and medical treatment; recognizing the signs and symptoms of drug overdose; and ensuring inmates are consistently monitored to ensure they have their medical needs met and that this training is inadequate. *Dkt. 5 ¶82; 84*.

35.     An inadequate training program or a failure to train "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of the persons with whom the [county officials] come into contact." *Harris,* 489 U.S. at 388, 109 S.Ct.

1197. Specifically, to hold a municipality liable under § 1983 based on a policy of inadequate training, a plaintiff must establish that (1) the training procedures of the municipality's policymaker were inadequate; (2) the municipality's policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused the plaintiff's injury. *See Huong v. City of Port Arthur,* 961 F.Supp. 1003, 1007 (E.D.Tex.1997) (citing *Baker v. Putnal,* 75 F.3d 190, 200 (5th Cir.1996)). "In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton*, 489 U.S. at 390, 109 S.Ct. 1197.

36. There is no sufficient allegation here that the training is inadequate. *See Benavides v. County of Wilson,* 955 F.2d 968, 973 (5th Cir.1992). Plaintiffs fail to plead sufficient facts to show that the City's existing training policy in these areas is inadequate. *Dkt. 5*. Plaintiffs have pled no sufficient factual allegations to show that the City was deliberately indifferent about adopting its training policy and that the specific areas of training it indicates were not done were in fact constitutionally required. Plaintiffs' failure to plead sufficient facts that the City's training practices were in fact deliberately indifferent to the decedent. *Id.*

37. Plaintiffs must show that "the need for more or different training is so obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers ... can reasonably be said to have been deliberately indifferent to the need." *Benavides v. Cnty. of Wilson,* 955 F.2d 968, 972 (5th Cir.1992) (quoting *City of Canton, Ohio v. Harris,* 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). The mere fact that an injury could have been avoided if an officer had better training is insufficient to show a constitutional violation. *See Harris,* 489 U.S. at 391, 109 S.Ct. 1197. A plaintiff must allege facts to plausibly suggest the municipality's deliberate indifference to the need for proper training; and ordinarily, to meet this

burden, a plaintiff may allege that the municipality had "[n]otice of a pattern of similar violations," which were "fairly similar to what ultimately transpired." *Harris* at 381; *see also Connick,* 563 U.S. at 62–63, 131 S.Ct. 1350. In this regard, "actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). "To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is 'obvious and obviously likely to result in a constitutional violation.'" *Id.*

38. Plaintiffs do not plead one single in-custody death caused by overdose in the City's jail. *Dkt. 5*. Plaintiffs do not plead one single instance of a City employee failing to identify an overdose or failing to respond to an overdose in the City jail prior to decedent. *Id*. Plaintiffs do not plead any facts whatsoever about the City's training policy, much less how it was inadequate as to lead to a failure to spot an overdose prior to the decedent's incident. *Id*.

39. Conversely, Plaintiffs' First Amended Complaint shows that Defendant Becerra administered Narcan to Stapleton shortly after the medical emergency began. Dkt. 5, *¶42*. There is nothing factually alleged in the pleading to sufficiently suggest that the City's training policies were constitutionally inadequate and that there was deliberate indifference in regards to training policies and jail supervision and detention.

40. In this regard though Plaintiffs are not required to provide detailed factual allegations, the complaint must "raise a right to relief above the speculative level." *In re La. Crawfish Producers,* 772 F.3d 1026, 1029 (5th Cir.2014) (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). Without some further factual enhancement, Plaintiffs' complaint "stops short of the line between possibility and plausibility." *Twombly,* 550 U.S. at 546, 127 S.Ct. 1955. Here, Plaintiffs merely recite the

elements and assert legal conclusions without making any factual allegations to support them. This is inadequate to impose liability on the City. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million*, 296 F.3d 376, 378 (5th Cir. 2002)(quoting *Fernandez–Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir.1993)). The Court should dismiss Plaintiffs' failure to train allegations.

**G. Wrongful Death and Survival claims**

41. Plaintiffs seek to recover under the Texas wrongful death and survival actions. To the extent Plaintiffs plead that they have a right to recover for the alleged constitutional violations, the claims fail against the City for the reasons stated above: Plaintiffs have failed to show that a constitutional violation occurred. To the extent that Plaintiffs allege an independent right to recover under Texas' wrongful death and survivor statutes, the claims must be dismissed as to the officers because Plaintiffs have made an irrevocable election of remedies by pleading the same claim against the City of Progresso, and should be dismissed as to the City because it remains immune.

42. A Texas governmental unit is generally immune from tort liability unless the legislature has somehow waived immunity. *Texas Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583, 586–87 (Tex. 2001). The Texas Supreme Court has held that "all tort theories of recovery alleged against a governmental unit are presumed to be under the [TTCA]." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008) (citations and internal quotation marks omitted). The TTCA has a limited immunity-waiver provision, removing governmental immunity for "personal injury and death so caused by a condition or use of tangible personal or real property if the

elements and assert legal conclusions without making any factual allegations to support them. This is inadequate to impose liability on the City. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million*, 296 F.3d 376, 378 (5th Cir. 2002)(quoting *Fernandez–Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir.1993)). The Court should dismiss Plaintiffs' failure to train allegations.

**G. Wrongful Death and Survival claims**

41. Plaintiffs seek to recover under the Texas wrongful death and survival actions. To the extent Plaintiffs plead that they have a right to recover for the alleged constitutional violations, the claims fail against the City for the reasons stated above: Plaintiffs have failed to show that a constitutional violation occurred. To the extent that Plaintiffs allege an independent right to recover under Texas' wrongful death and survivor statutes, the claims must be dismissed as to the officers because Plaintiffs have made an irrevocable election of remedies by pleading the same claim against the City of Progresso, and should be dismissed as to the City because it remains immune.

42. A Texas governmental unit is generally immune from tort liability unless the legislature has somehow waived immunity. *Texas Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583, 586–87 (Tex. 2001). The Texas Supreme Court has held that "all tort theories of recovery alleged against a governmental unit are presumed to be under the [TTCA]." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008) (citations and internal quotation marks omitted). The TTCA has a limited immunity-waiver provision, removing governmental immunity for "personal injury and death so caused by a condition or use of tangible personal or real property if the

governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM.CODE § 101.021(2).

43. Here, Plaintiffs fail to allege that any use of tangible personal or real property was used in causing Stapleton's death. As a result, Plaintiffs have failed to invoke the immunity waiver and the City's immunity remains undisturbed. Dismissal of the state law claims is proper.

## CONCLUSION & PRAYER

THEREFORE, based on any one or more of the foregoing reasons, Defendant hereby requests that the Court dismiss the Plaintiffs' Complaint, or those portions/claims the Court deems appropriate, against the for failure to state a viable claim for relief.

DEFENDANT further requests that upon final hearing of this case, that all relief sought by Plaintiff be denied, that the DEFENDANT be awarded such other and further relief, at law or in equity, including costs of court, to which it may show itself entitled to receive.

SIGNED on the 2nd day of MAY 2023.

Respectfully submitted,

By: *Joushua Duane H. Neece*
JOSHUA DUANE H. NEECE
Attorney In Charge
State Bar No. 24116819
So. District Id No. 3657894
jdhneece@rampagelaw.com

By: *Kelly R. Albin*
KELLY R. ALBIN
State Bar No 24086079
So. Dist. ID No. 3792304
kralbin@rampagelaw.com

By: *Ricardo J. Navarro*
RICARDO J. NAVARRO
State Bar No. 14829100
So. District Id No. 5953
rjnavarro@rampagelaw.com

**DENTON NAVARRO ROCHA BERNAL & ZECH**
A Professional Corporation
701 E. Harrison Ste 100
Harlingen, Texas 78550
956/421-4904
956/421-3621 (fax)

**COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document has been served on the persons or parties identified below in accordance with one or more of the recognized methods of service by the Federal Rules of Civil Procedure on the 2nd day of MAY 2023.

| | |
|---|---|
| Matthew S. Manning<br>WEBB CASON & MANNING, P.C.<br>710 Mesquite Street<br>Corpus Christi, Texas 78401<br>Email: matt@wcctclaw.com; service@wcctxlaw.com | **By E-Filing Methods** |
| Parker S. Webb<br>WEBB CASON & MANNING, P.C.<br>710 Mesquite Street<br>Corpus Christi, Texas 78401<br>Email: parker@wcctclaw.com; service@wcctxlaw.com | **By E-Filing Methods** |
| Charles C. Webb<br>WEBB CASON & MANNING, P.C.<br>710 Mesquite Street<br>Corpus Christi, Texas 78401<br>Email: charlie@wcctclaw.com; service@wcctxlaw.com | **By E-Filing Methods** |

*Joshua Duane H. Neece*
RICARDO J. NAVARRO
KELLY R. ALBIN
JOSHUA DUANE H. NEECE