**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| **DAWN STAPLETON, as a personal** | § | |
| **Representative of the Estate of** | § | |
| **Joshua Stapleton and Jaqueline Louise** | § | |
| **Stapleton** | § | |
| | § | |
| **Plaintiffs** | § | |
| | § | |
| **Vs** | § | **Civil Action No. 7:23-CV-00069** |
| | § | |
| **ERNESTO LOZANO, JUSTIN LEE** | § | |
| **BECERRA, CESAR SOLIS AND,** | § | |
| **THE CITY OF PROGRESO, TX** | § | |
| **et. al** | § | |
| **Defendants** | § | |

**RULE 12(b)(6) MOTION TO DISMISS**
**OF ERNESTO LOZANO, JUSTIN LEE BECERRA, AND CESAR SOLIS,**
**IN THEIR INDIVIDUAL CAPACITIES**

---

NOW COMES DEFENDANTS ERNESTO LOZANO, JUSTIN LEE BECERRA, AND CESAR SOLIS IN THEIR INDIVIDUAL CAPACITIES (hereafter "Defendants" or "Individual Defendants") and files this, their, Motion to Dismiss pursuant to Rule 12(b)(6) and would respectfully show the Court as follows.

### I. NATURE OF THE CASE AND SUMMARY OF THE ARGUMENTS

1.    Plaintiffs Dawn and Jacqueline Stapleton ("Plaintiffs") bring this civil rights lawsuit against the City of Progreso and Individual Defendants, claiming, in part, that the officers are liable for Joshua Stapleton's in-custody death because they failed to render medical care and created unsafe conditions.

2.    The Individual Defendants are entitled to qualified immunity because, at most, Plaintiffs allege negligence in not distinguishing between intoxication from alcohol and intoxication from

prescription drugs. The pleaded facts show that **within seconds of being alerted to Stapleton's medical distress, officers responded** and had Stapleton transported to a hospital minutes later. Plaintiffs have not and cannot show that the Individual Defendants were deliberately indifferent to a serious risk of harm in violation of a clearly established right, or that they acted unreasonably. As a result, each officer is entitled to qualified immunity.

## II. FACTS ALLEGED IN PLAINTIFFS' FIRST AMENDED COMPLAINT

3.      On February 26, 2021, Officer Lozano arrested Stapleton for Driving While Intoxicated. Pl.'s FAC ¶¶ 21, 49, Illustration CC; Defs.' Ex. "A" (Stapleton Police Report).[1] Stapleton was in the car with his friend, Michael Guerrero, who was arrested for Public Intoxication. Pls.' FAC ¶ 21. Lozano found what he believed to be prescription drugs in the car and charged both Stapleton and Guerrero with possession of a controlled substance. Pls.' FAC ¶¶ 21-22, 51; Dts.' Ex "A." Both men were taken to the City jail. On arrival, Stapleton allegedly told Lozano that he was "not feeling well." Pls.' FAC ¶ 24. Afterwards, at approximately 6:36 p.m., Stapleton walked unassisted to a cell where he was held with Guerrero. Pls.' FAC ¶¶ 23-25, Illustrations A-C. Lozano came back to the cell several times and just before 7:00 p.m., offered Stapleton hand sanitizer, which Stapleton walked to the cell door to receive. Pls.' FAC ¶ 26, Illustration D.

4.      At approximately 8:20 p.m., Stapleton stood up and walked unassisted to the cell door so that Officer Becerra could take his temperature. Pls.' FAC ¶ 29, Illustration F[2]; Dts.' Ex. "B" (full video of Illustration F). Over the next twenty-five minutes or so, both Officer Lozano and Officer Becerra passed Stapleton multiple times while escorting three women arrested for possession of a

---

[1] Plaintiffs have incorporated and depicted excerpts of various documents and videos on which are central to the claim in their First Amended Complaint. The court may consider "[d]ocuments that a defendant attaches to a motion to dismiss ... if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).
[2] Plaintiffs have two different photos that are both identified as "Illustration F." The photo cited here appears on page 10.

controlled substance to a nearby cell. Pls.' FAC ¶ 30-32, Illustration F-J.[3] There are no allegations

that Stapleton was ever violent, delusional, or attempting to harm himself. Stapleton was sitting

upright at 8:31 p.m. when Lozano last passed him and sat with his head near his lap at

approximately 8:42 p.m. when Becerra walked by. *Id*. Lozano did not leave the jail after the women

were booked. Pls.' FAC ¶ 59-60.

5.      For approximately the next hour, Guerrero stood just feet away from Stapleton and appears

to have had a casual conversation with the women in the neighboring cell. Around 9:50 p.m.,

Guerrero kneeled next to Stapleton and appeared to check on him. Pls.' FAC ¶ 36, Illustration N-

O; Defs.' Ex. "C" (full video of Illustration N and O). At approximately 9:54 p.m., Guerrero

approached the cell door and appeared to yell for help.  Defs.' Ex. C. at 1:11:03. Just **15 seconds**

**later**, Officer Lozano responded and radioed for assistance. *Id*. at 1:11:18.

6.      Approximately one minute later, Stapleton began receiving emergency medical treatment

from firefighters who were stationed in the building. Pls.' FAC ¶¶ 40-42, Illustrations T-X. Fire

fighters sometimes monitor the inmates when officers respond to calls. Pls.' FAC ¶¶ 78-105. All

fire fighters in Texas have emergency medical training that is certified by the Texas Department

of Health and Human Services, or a comparable organization. Tex. Admin. Code § 423.1. Police

officers are not required to have similar training. *See id*. at § 217.1. Stapleton was administered

NARCAN before he was transported to the hospital.

7.      Stapleton was transported to the hospital at approximately 10:09 p.m. Pls.' FAC 46,

Illustrations AA. He died sometime between 10:44 p.m. – 10:53 p.m. Pls.' FAC ¶ 46. The cause

of death was "combined drug toxicity." Stapleton's toxicology report reflected the presence of

---

[3] Plaintiffs have two different photos that are both identified as "Illustration F." The photo cited here appears
on page 11.

alcohol, fentanyl, Narcan, Clonazepam, Alprazolam, Dihydro-codeine/Hydrocodol, Hydrocodone, Norfentanyl, and Mitragynine.  Pls.' FAC ¶¶ 66-67.

8.      Plaintiffs contend that the facts described above show that Chief Solis, Officer Lozano and Officer Becerra made a "conscious decision…to fail to provide Mr. Stapleton with medical treatment." Pls.' FAC ¶ 114.  Plaintiffs contend that not checking on Stapleton between approximately 8:42 p.m. and 9:54 p.m. constitutes "dangerous, heinous, and callously agonizing conditions result[ing] in Mr. Stapleton's death." Pls.' FAC ¶ 109. Plaintiffs allege that Chief Solis failed to train Lozano and Becerra on the importance of consistent monitoring of inmates. Pls.' FAC ¶¶ 84, 86.

9.      Plaintiffs bring causes of action under Section 1983 for alleged Fourth and Fourteenth Amendment violations, advancing the former under a theory of episodic acts or omissions. Pls.' FAC ¶¶ 88-91. In addition to the alleged Constitutional injuries, Plaintiffs seek damages under the Texas survival and wrongful death statutes.

### III. RULE 12 (b)(6) STANDARD

10.     Plaintiffs' First Amended Complaint does not state a plausible claim for relief against the Individual Defendants. Rule 12(b)(6) allows dismissal if a plaintiff fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Pursuant to Rule 12, a plaintiff's claim survives only to the extent it passes the plausible-pleading test of *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In this way, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice

to prevent a motion to dismiss. *Fernandez–Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir. 1993).

11.     This does not require detailed factual allegations, but it does require "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

## IV.  ARGUMENTS & AUTHORITIES

12.     The Individuals are police officers with the City of Progresso and entitled to qualified immunity. Qualified immunity is intended to set a high bar and protects "all but the plainly incompetent or those who knowingly violate the law." *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985).

13.     When qualified immunity is an issue, the plaintiff must allege "particularized facts which, if proved, would defeat a qualified immunity defense." *Bonner v. Alford*, No. 3:10-CV-2556-N (BF), 2014 WL 285139, *2 (N.D. Tex. Jan. 27, 2014) *aff'd*, 594 F. App'x 266 (5th Cir. 2015) (quoting *Brown v. Glossip*, 878 F.2d 871, 874 (5th Cir. 1989)). To do so, a plaintiff "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012), overruled on other grounds by *Carswell v. Camp*, 54 F.4th 307 (2022); *Meadours v. Ermel*, 483 F. 3d 417, 421 (5th Cir. 2007); *Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995). "A complaint which raises the likely issue of immunity cannot be cast in 'broad, indefinite and conclusory terms,' but must include detailed facts

supporting the contention that the plea of immunity cannot be sustained." *Hampton v. Pamerleau*, No. SA-14-CA-806-XR, 2015 WL 4953084, *11 (W.D. Tex. Aug. 18, 2015) (citations omitted).

14.     A plaintiff seeking to defeat qualified immunity must show: (1) that the official violated a statutory or constitutional right; and (2) that the right was "clearly established at the time of the challenged conduct," such that the official's actions were objectively unreasonable. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011); *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). The Court can base a decision on either prong. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

15.     There are two basic questions involved in resolving questions of qualified immunity: First, taken in the light most favorable to the party asserting the injury, do the facts alleged show that the public official's conduct violated a constitutional right? *Scott v. Harris*, 550 U.S. 372, 377 (2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, was the right clearly established in light of the specific context of the case? *Id*.; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).  The inquiry is resolved in favor of granting qualified immunity unless, at the time and under the circumstances of the challenged conduct, *all reasonable officers* would have realized the conduct was prohibited by the federal law on which the suit is founded. *Morgan*, 659 F.3d at 371; *Dudley v. Angel*, 209 F.3d 460, 462 (5th Cir. 2000) (emphasis added); *Pierce v. Smith*, 117 F.3d 866, 871 (5th Cir. 1997).

16.     Generally, to satisfy this standard, the plaintiff must "identify[ ] a case in which an officer acting under similar circumstances was held to have violated the [Constitution], and ... explain[ ] why the case clearly proscribed the conduct of that individual officer." While an exact case on point is not required, the confines of the officers' violation must be "beyond debate." Broad general

propositions are not enough to overcome qualified immunity. *Cope v. Cogdill*, 3 F.4th 198, 205 (5th Cir. 2021) (alterations in original) (internal citations omitted).

17.     Here, Plaintiffs' claims against the Individuals Defendants are insufficient to overcome qualified immunity, even at the motion to dismiss stage. As this motion will show, the Fourth Amendment claim fails because the alleged injury occurred when Stapleton was a pre-trial detainee, at which time his constitutional protections stemmed from the Fourteenth Amendment, not the Fourth Amendment. This motion will also show that Plaintiff's Fourteenth Amendment claim fails because the pleaded facts do not show that the officers were deliberately indifferent to a substantial risk of serious harm or that the officers' conduct violated clearly established law and was unreasonable.

18.     Rather, Plaintiffs' First Amended Complaint shows that Stapleton demonstrated signs of intoxication and that there was a period of just over an hour when officers did not walk back to the cells for face to face observations. When alerted to Stapleton's condition, however, Officer Lozano responded within seconds. On these facts, Plaintiffs' constitutional claims fail. The state law claims necessarily fail, as well. *See Rodgers v. Lancaster Police & Fire Dep't*, 819 F.3d 205, 208-210 (5th Cir. 2016) (discussing Texas' wrongful death and survival statutes as available remedies for constitutional violations).

**A.     The Fourth Amendment claim fails because Stapleton was a pre-trial detainee.**

19.     As an initial matter, Plaintiffs' Fourth Amendment claim fails because the constitutional protection is inapplicable.

20.     An arrestee's Fourth Amendment protections related to medical care end when he becomes a pretrial detainee. Once the initial seizure concludes, the right to medical care derives from the

Fourteenth Amendment. *Kelson v. Clark*, 1 F.4th 411, 417 (5th Cir. 2021) (citing *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 473 (5th Cir. 1996)).

21.     Here, the alleged injury occurred after Stapleton was detained; specifically, when he was in the City's jail. Plaintiffs plead no facts suggesting that Stapleton was denied necessary medical care during the initial traffic stop or at any time prior to being detained at the City's jail. Therefore, the Fourth Amendment claims should be dismissed.

**B.     The Fourteenth Amendment claim fails because the officers were not deliberately indifferent to a substantial risk of serious harm and did not violate a clearly established right or were unreasonable.**

22.     Next, Plaintiffs complain that the individuals denied Stapleton medical care and failed to ensure his safety by allowing just over an hour to lapse between face-to-face observations. Pls.' FAC ¶¶ 107, 109. Plaintiffs have failed to state a viable claim under the Fourteenth Amendment.

   **i.     Denial of Medical Care**

23.     To prevail on their Fourteenth Amendment claim in the denied-medical-care context, Plaintiffs must show a violation of Stapleton's "substantive protection against 'deliberate indifference' to a 'serious medical needs.'" *S.R. by and through Musgrove v. Scott Cnty.*, Cause No. 22-60124, 2023 WL 2964413, at *2 (5th Cir. April 14, 2023) (citing *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001)). "[A] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Sims v. Griffin*, 35 F.4th 945, 949 (5th Cir. 2022) (quotation omitted). "Deliberate indifference [to such needs] is an extremely high standard to meet." *Musgrove*, Cause No. 22-60124, 2023 WL 2964413, at *2 (citing *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).

24.     To meet their burden, Plaintiffs must show that the officers (1) were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," (2) that they "actually drew the inference," and (3) that they "disregarded that risk." *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020) (quotation omitted).

25.     Therefore, **Plaintiffs must show that Chief Solis, Officer Becerra, and Officer Lozana subjectively believed that Stapleton was at a substantial risk of overdosing and, nevertheless, "refused to treat h[im], ignored h[is] complaints, intentionally treated h[im] incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for [his] serious medical needs."** *Musgrove*, Cause No. 22-60124, 2023 WL 2964413, at \*2 (quoting *Davis v. Lumpkin*, 35 F.4th 958, 963 (5th Cir. 2022) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985))).

26.     The facts on which Plaintiffs conclude the officers should have drawn an inference that a substantial risk of harm existed are: (1) Lozano found prescription medications in the car that Stapleton and Guerrero were pulled over in (2) Stapleton told Lozano around 6:30 p.m. that "he did not feel well" and (3) Stapleton was swaying and unsteady on his feet when Becerra took his temperature around 8:20 p.m. and was later sitting on the floor with his head down. *See* Pls.' FAC ¶¶ 105 - 111. Because the officers' interactions with Stapleton were different, the each defendants' qualified immunity defense is addressed in turn.

**a. Chief Solis**

27.     Based on the First Amended Complaint, Chief Solis only observed Stapleton once before Stapleton was in medical distress, which was at the traffic stop when Solis assisted Officer Lozano in removing Guerrero from the vehicle Stapleton was driving. Pls.' FAC ¶¶ 42, 50; Dts.' Ex. "A."

**No Constitutional violation against Solis**

28.    The question as to Solis, then, is whether the pleaded facts show that Solis subjectively believed that Stapleton was at a substantial risk of injury from an overdose and, nevertheless, "refused to treat h[im], ignored h[is] complaints, intentionally treated h[im] incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for [his] serious medical needs." *Musgrove*, Cause No. 22-60124, 2023 WL 2964413, at *2. They do not. Indeed, it is not even clear from the pleadings at what point Stapleton ingested the fentanyl, Clonazepam, Alprazolam, Dihydro-codeine/Hydrocodol, Hydrocodone, Norfentanyl, and Mitragynine—it may well have been after Solis left the scene of the traffic stop.

29.    In any event, Plaintiffs plead no facts demonstrating that Stapleton behaved in some way at the traffic stop in Solis' presence that should have put Solis on notice that Stapleton overdosed, much less that Solis actually believed a substantial risk of serious harm existed. In fact, Plaintiffs do not plead that Stapleton demonstrated any signs of intoxication other than what is noted in the report (bloodshot eyes, slurred speech, and unsteady balance) during or after the traffic stop. *See* Dts.' Ex. "A." Further, Plaintiffs' First Amended Complaint (literally) shows Stapleton walking unassisted into the police station *after* the traffic stop; standing in his cell and getting hand sanitizer from Officer Lozano *after* the traffic stop; and later standing and walking to the cell door to have his temperature taken by Officer Becerra several hours *after* the traffic stop. Pls.' FAC Illustration A-D.

30.    Plaintiffs have failed to plead facts showing that Solis should have, *and did*, believe that Stapleton was at a substantial risk of serious harm from overdosing and refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct

that would clearly evince a wanton disregard for his serious medical needs. Accordingly, Plaintiff fails to state a viable denial-of-medical care claim against Solis.

**Solis did not violate clearly established law or act unreasonably**

31.     Even if Plaintiffs had pled a plausible constitutional violation against Solis—which they have not—Plaintiffs failed to demonstrate that Solis' conduct (not summoning medical assistance at the traffic stop) violated clearly established law and was unreasonable. In other words, they plead no basis to conclude that *every* reasonable officer who observes someone demonstrating signs of intoxication (bloodshot eyes, slurred speech, and unsteady balance) at a traffic stop would call for medical aid. *Morgan*, 659 F.3d at 371. As a result, they have not shown that Solis violated a right that was "clearly established." *Pearson*, 555 U.S. at 232.

32.     Plaintiffs fail to plead any facts that show Solis should have known and did know that Stapleton was at a substantial risk of serious harm and that Solis chose to ignore the risk, or that Solis' actions were unreasonable in light of clearly established law. Accordingly, Solis is entitled to qualified immunity against Plaintiffs' denial of medical care claim.

**b.  Officer Becerra**

33.     Plaintiffs plead that Officer Becerra observed Stapleton twice before Stapleton was in medical distress. First, Becerra took Stapleton's temperature at approximately 8:20 p.m. Pls.' FAC ¶ 29. Then, about twenty minutes later, Officer Becerra passed Stapleton who was sitting on the floor with his head down. Pls.' FAC ¶ 32, Illustrations H-J.

**No Constitutional violation against Becerra**

34.     The question as to Becerra, then, is whether the pleaded facts show that Becerra subjectively believed that Stapleton was at a substantial risk of injury from an overdose, and, nevertheless, "refused to treat h[im], ignored h[is] complaints, intentionally treated h[im]

incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for [his] serious medical needs." *Musgrove*, Cause No. 22-60124, 2023 WL 2964413, at *2. As with Solis, they do not.

35.    First, Plaintiffs plead nothing about Stapleton's temperature reading that was indicative of a substantial risk of overdose. Plaintiffs plead only that Stapleton appeared to be unsteady on his feet while having his temperature taken. Thus, Plaintiffs' medical-care claim against Becerra hinges on whether seeing Stapleton sway and then sit with his head down around 8:42 p.m.—a position that he could not have been in for more than 25 minutes—sufficiently shows that Becerra knew Stapleton was at a substantial risk of serious harm and ignored the risk. The claim is not plausible. An intoxicated person swaying and sitting on the floor, even with his head in his lap, is not, necessarily, indicative of someone experiencing a serious harm. As the Fifth Circuit notes, "s[e]rious harm isn't just any harm. [A person's] medical need had to be "so apparent that even laymen would recognize that care is required."" *Rogers v. Jarrett*, 63 F.4th 971, 976 (5th Cir. 2023) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006)). A risk of serious harm cannot be imputed from the facts here.

36.    Equally as important, Plaintiffs plead no facts evidencing that Becerra did, in fact, believe that Stapleton was suffering from a serious medical condition. ""[L]iability attaches only if [officials] actually knew—not merely should have known—about the risk.'  Bottom line: Mere negligence is not enough." *Rogers*, 63 F.4th at 977. Accordingly, Plaintiffs fail to state a viable denial of medical care claim against Becerra.

**Becerra did not violate clearly established law or act unreasonably**

37.    Even if Plaintiffs had pled a plausible constitutional violation against Becerra—which they have not—Plaintiffs failed to demonstrate that Becerra's conduct (not summoning medical

assistance after observing Stapleton swaying and, later, sitting with his head down) violated a clearly established right and was unreasonable. In other words, they plead no basis to support their conclusion that every reasonable officer who observes someone demonstrating signs of intoxication from alcohol would call for medical aid. *Morgan*, 659 F.3d at 371. To the contrary, the Fifth Circuit recently upheld a summary judgment in favor of officers when an arrested, intoxicated person appeared to lay down and go to sleep in the back of the cruiser, but in fact was dying of drug induced cardia arrest. *Musgrove*, Cause No. 22-60124, 2023 WL 2964413, at * 2. Plaintiffs have not shown that Becerra violated a right that was clearly established or that Becerra acted unreasonably based on his limited interaction with Stapleton.

38.     Plaintiffs fail to plead any facts that show Becerra should have known, *and did know*, that Stapleton was at a substantial risk of serious harm and chose to ignore the risk, or that Becerra's actions were unreasonable in light of clearly established law. Accordingly, Becerra is entitled to qualified immunity.

**c.  Officer Lozano**

39.     Plaintiffs plead that Officer Lozano observed Stapleton on several occasions prior to Stapleton being in medical distress: at the traffic stop where Lozano found the prescription medications in the car; at the police station where he was told by Stapleton that he "did not feel well;" and at the cells where Lozano observed Stapleton unsteady on his feet, and, later, sitting on the floor. Pls.' FAC ¶¶ 20-26, 30-31.

**<u>No Constitutional violation against Lozano</u>**

40.     The question as to Lozano, then, is whether the pleaded facts show that Lozano subjectively believed that Stapleton was at a substantial risk of injury from an overdose, and, nevertheless, "refused to treat h[im], ignored h[is] complaints, intentionally treated h[im] incorrectly, or engaged

in any similar conduct that would clearly evince a wanton disregard for [his] serious medical needs." *Musgrove*, Cause No. 22-60124, 2023 WL 2964413, at *2. As with Solis and Becerra, they do not.

41.    As discussed *supra*, Plaintiffs have pled nothing showing that Stapleton exhibited behavior that appeared to be any worse from signs of alcohol intoxication or that Stapleton ever indicated that he had consumed prescription medications. Instead, Plaintiffs suggest that because Lozano found pills in the car, he should have assumed Stapleton had overdosed. But the fact that *the pills were there* is contrary to the conclusion that Plaintiffs suggest Lozano should have drawn—that Stapleton consumed them. Moreover, there was another person in car to whom the pills could have belonged. This is different from a case where, for example, an *empty* blister-pack of pills is found during a search and the arrested person admits to consuming the *missing* pills. *See, e.g, Sanchez v. Young Cty*., 956 F.3d 785, 788 (5th Cir. 2020).

42.    Further, Plaintiffs plead facts showing that for several hours after the initial traffic stop, Stapleton was moving unassisted and was generally cooperative. Pls.' FAC Illustrations A-F; Dts.' Ex. B-C. The only other facts Plaintiffs plead are that Stapleton told Lozano he did not feel well and that Lozano observed Stapleton unsteady on his feet and sitting down. Stapleton was not vomiting, acting erratically, or displaying any behavior that appeared to be caused by something more than alcohol intoxication, which is not necessarily a serious medical need. To meet their burden, Plaintiffs must show that "even layman" would have perceived that Stapleton was exposed to a substantial risk of serious bodily injury or serious medical consequences. *See Farmer v. Brennan*, 511 U.S. 825, 837–42 (1994); *Rogers*, 63 F.4th at 976. (5th Cir. 2023) (quoting Gobert, 463 F.3d at 345 n.12. A risk of serious harm cannot be imputed from the facts here.

43.     Equally as important, Plaintiffs plead no facts evidencing that Lozano *did, in fact, believe* that Stapleton was suffering from a serious medical condition. Plaintiffs do not allege that Lozano, for example, knew Stapleton to be a drug user, or observed Stapleton vomit up part of a plastic baggie used to carry drugs, or observed Stapleton repeatedly vomit black bile, or observed Stapleton beg to go to the hospital, or observed Stapleton exhibit other behavior reasonably informing Lozano that a drug overdose had occurred. *See, e.g., Sims*, 35 F.4th at 948-951 (explaining there that the officers' admitted observation of certain behaviors made them aware that the inmate was suffering from a serious medical condition). Accordingly, Plaintiffs fail to state a viable claim based on denial of medical care against Lozano.

**Lozano did not violate clearly established law**

44.     Even if Plaintiffs had pled a plausible constitutional violation—which they have not— Plaintiffs failed to demonstrate that Lozano's conduct (not summoning medical assistance after finding pills in the car, being told Stapleton did not feel well, and observing Stapleton swaying and, later, sitting on the floor) after a traffic stop violated a clearly established right and was unreasonable. In other words, they plead no basis to conclude that every reasonable officer who observes someone demonstrating signs of intoxication would immediately call for medical aid. And, in fact, the Fifth Circuit has found to the contrary. *Musgrove*, Cause No. 22-60124, 2023 WL 2964413, at * 2. Plaintiffs have not shown that Lozano violated a right that was "clearly established" or acted unreasonably. *Pearson,* 555 U.S. at 232.

45.     Plaintiffs fail to plead any facts that show Lozano should have known, and did know, that Stapleton was at a substantial risk of serious harm and chose to ignore the risk, or that Lozano's actions were unreasonable in light of clearly established law. Accordingly, Lozano is entitled to qualified immunity.

**ii.     Failure to perform face-to-face observation for just over an hour**

46.     Plaintiffs also allege that the individual defendants failed to ensure Stapleton's safety based on the 71 minutes that allegedly lapsed between face-to-face observations.   This episodic omissions claim "faults specific jail officials for their acts or omissions" causing the complained-of harm. Pls.' FAC ¶ 81; *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009). To state a viable episodic-acts-or-omissions claim, the plaintiff must show the defendant acted with subjective deliberate indifference. *Hare*, 74 F.3d at 647–48. A defendant acts with subjective deliberate indifference when he "knows of and disregards an excessive risk" of serious harm to a pretrial detainee. *Kelson*, 1 F.4th at 417 (quoting *Garza v. City of Donna*, 922 F.3d 626, 635 (5th Cir. 2019)).

47.     In other words, to establish deliberate indifference, a plaintiff must show (1) the defendant was aware of facts from which he could infer a substantial risk of serious harm existed, and (2) the defendant "actually drew that inference." *Id.* (quoting *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020)). "[K]nowledge of a substantial risk of harm may be inferred if the risk was obvious." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999). Instead, "[t]o reach the level of deliberate indifference, official conduct must be 'wanton,' which is defined to mean 'reckless.'" *Alderson*, 848 F.3d at 420 (citing *Johnson*, 759 F.2d at1238 (5th Cir. 1985) ).

48.     Plaintiffs rely on the same facts to try and show an unsafe condition as those relied on to try and show the individuals failed to render medical care. And for the same reasons, the claim fails. First, there are no facts demonstrating that Chief Solis, Officer Becerra, or Officer Lozano

should have been aware that Stapleton was at a substantial risk of serious harm or that they actually drew the inference. At worst, they each saw Stapleton displaying mild signs of intoxication.

49.     Even if the individuals had cause to believe, and did believe, that Stapleton was at a substantial risk of serious harm, Plaintiffs have not alleged that the individuals were deliberately indifferent to same. Plaintiffs seem to aver that because the Texas Commission on Jail Standards requires face-to-face observations every 60 minutes and because a timespan of 71 minutes passed between when Officer Becerra saw Stapleton and when Lozano responded to the cell, Plaintiffs have met their burden. Their conclusion is flawed. For one thing, Plaintiffs acknowledge that the TCJS do not apply to a city-run facility, like Progresso. More importantly, non-compliance with a standard does not, in and of itself, show deliberate indifference *to a serious risk of harm*—here, the risk of death from overdose.

50.     Said another way, Plaintiffs have not tied non-compliance with the (inapplicable) TCJS standard to the individual officers' subjective belief about Stapleton's condition. If, instead, Plaintiffs had pleaded facts showing that the officers were familiar with the TCJS standards; and had pleaded facts showing that the officers had reason to believe that a face-to-face observation every 60 minutes would reduce the chance of someone dying from an overdose; and had pleaded facts showing that one of the officers believed that Stapleton had consumed a dangerous amount of fentanyl and Hydrocodone and other prescription drugs; and had pleaded facts that one of the officers, knowing the risk to Stapleton, did not follow a known and understood standard, then— and only then—Plaintiffs would have pleaded a plausible case. As it stands, they have not. Based on the pleaded facts, the TCJS standard is not material to the outcome here. Because Plaintiffs do not plead facts showing that any of the individuals were deliberately indifferent to a substantial risk of serious harm, Plaintiffs' unsafe condition claim fails.

### iii. Failure to train

51.     Plaintiffs also seem to aver that Solis is liable for failing to train Becerra and Lozano about the importance of face-to-face observations. In a Section 1983 claim for failure to supervise or train, the plaintiff must show that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Smith v. Brenoettsy,* 158 F.3d 908, 911–12 (5th Cir. 1998). "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 912 (internal quotation omitted).

52.     To establish deliberate indifference, "a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Cousin v. Small,* 325 F.3d 627, 637 (5th Cir.2003) (internal quotation omitted). Where a plaintiff fails to establish deliberate indifference, the court need not address the other two prongs of supervisor liability. *Estate of Davis ex rel. McCully v. City of N. Richland Hills,* 406 F.3d 375, 382 (5th Cir.2005). Furthermore, "for a supervisor to be liable for failure to train, the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." *Roberts v. City of Shreveport,* 397 F.3d 287, 293 (5th Cir. 2005) (quotations and citation omitted). Further, "for liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Id.*

53.     Here, Plaintiff fails to allege any other incidents bearing resemblance to the facts from which it could be inferred that Solis was deliberately indifferent. This alone forecloses the claim.

But as discussed above, the claim also fails for want of an actual constitutional violation. As a result, Plaintiffs' claim against Solis for failure to supervise is meritless and must be dismissed.

### iv.    Wrongful Death and Survival claims

54.    Plaintiffs seek to recover under the Texas wrongful death and survival actions. To the extent Plaintiffs plead that they have a right to recover for the alleged constitutional violations, the claims fail for the reasons stated above: the individual defendants are entitled to qualified immunity. To the extent that Plaintiffs allege an independent right to recover under Texas' wrongful death and survivor statutes, those claims must be dismissed as to the officer because Plaintiffs have made an irrevocable election of remedies by pleading the same claim against the City of Progresso.

55.    Under Texas law, the Texas Tort Claims Act "essentially prevents an employee from being sued at all for work-related torts and instead provides for a suit against the governmental employer." *Garza v. Harrison*, 574 S.W.3d 389, 400 (Tex. 2019). Section 101.106(e) of the TTCA states: "[i]f a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(e). The Texas Supreme Court has held that "all tort theories of recovery alleged against a governmental unit are presumed to be under the [TTCA]." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008) (citations and internal quotation marks omitted). Because it is a tort claim against a governmental unit, Plaintiffs' negligence claims are presumed to be under the TTCA.

56.    The claims against the City are based on a theory of vicarious liability for the actions, or alleged inactions, of the officers. Pls.' FAC ¶¶ 129-133 (citing the same facts underpinning the constitutional claims as those underpinning the state law claims). Thus, the thrust of Plaintiffs'

cause of action under the TTCA against the City is rooted in the same alleged violations as the claims against the officers. As such, § 101.106 precludes them from maintaining an action both the City and the officers where, as here, the City has notice of the claim. *See Bustos v. Martini Club Inc.*, 599 F.3d 458, 464 (5th Cir. 2010) (affirming the dismissal of state-law tort claims against individual officers under § 101.106(e) when the tort claim against the city was rooted in the same alleged violations as the claims against the officers). The wrongful death and survival claims against the individual officers must be dismissed.

## CONCLUSION & PRAYER

THEREFORE, based on any one or more of the foregoing reasons, Defendants hereby request that the Court dismiss the Plaintiff's Original Complaint, or those portions/claims the Court deems appropriate, against the for failure to state a viable claim for relief.

DEFENDANTS further request that upon final hearing of this case, that all relief sought by Plaintiff be denied, that the DEFENDANTS be awarded such other and further relief, at law or in equity, including costs of court, to which they may show themselves entitled to receive.

SIGNED on the 1st day of February 2023.

Respectfully submitted,

By:    *Joushua Duane H. Neece*
       JOSHUA DUANE H. NEECE
       Attorney In Charge
       State Bar No. 24116819
       So. District Id No. 3657894
       jdhneece@rampagelaw.com

By:    *Kelly R. Albin*
       KELLY R. ALBIN
       State Bar No 24086079
       So. Dist. ID No. 3792304
       kralbin@rampagelaw.com

Individual Defendants' Rule 12 Motion to Dismiss                                    -20-

By:     _Ricardo J. Navarro_
        RICARDO J. NAVARRO
        State Bar No. 14829100
        So. District Id No. 5953
        rjnavarro@rampagelaw.com

        **DENTON NAVARRO ROCHA
        BERNAL & ZECH**
        A Professional Corporation
        701 E. Harrison Ste 100
        Harlingen, Texas 78550
        956/421-4904
        956/421-3621 (fax)

        **COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document has been served on the persons or parties identified below in accordance with one or more of the recognized methods of service by the Federal Rules of Civil Procedure on the 2nd day of MAY 2023.

Matthew S. Manning                    **By E-Filing Methods**
WEBB CASON & MANNING, P.C.
710 Mesquite Street
Corpus Christi, Texas 78401
Email: matt@wcctclaw.com; service@wcctxlaw.com

Parker S. Webb                        **By E-Filing Methods**
WEBB CASON & MANNING, P.C.
710 Mesquite Street
Corpus Christi, Texas 78401
Email: parker@wcctclaw.com; service@wcctxlaw.com

Charles C. Webb                       **By E-Filing Methods**
WEBB CASON & MANNING, P.C.
710 Mesquite Street
Corpus Christi, Texas 78401
Email: charlie@wcctclaw.com; service@wcctxlaw.com

*Kelly R. Albin*
RICARDO J. NAVARRO
KELLY R. ALBIN
JOSHUA DUANE H. NEECE