IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

MCALLEN DIVISION

| | | |
|---|---|---|
| STAPELTON, et al. | § | CASE NO. M-23-CV-69 |
| | § | MCALLEN, TX |
| VERSUS | § | THURSDAY, |
| | § | FEBRUARY 15, 2024 |
| LOZANO, et al. | § | 4:10 PM TO 4:23 PM |

MOTION HEARING

BEFORE THE HONORABLE RICARDO H. HINOJOSA
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

| | |
|---|---|
| FOR THE PARTIES: | SEE NEXT PAGE |
| COURT REPORTER: | ANTONIO TIJERINA |
| COURT CLERK: | UNKNOWN |

TRANSCRIPTION SERVICE BY:

Veritext Legal Solutions
330 Old Country Road, Suite 300
Mineola, NY 11501
Tel: 800-727-6396 ▼ www.veritext.com

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

APPEARANCES:

FOR THE PLAINTIFFS:

WEBB CASON & MANNING
Matthew Manning
710 N Mesquite Street
Corpus Christi, TX 78401
361.887.1031

FOR THE DEFENDANTS:

DENTON NAVARRO ROCHA BERNAL & ZECH PC
Joshua Neece
2514 N Main Avenue
San Antonio, TX 78212
210.227.3243

MCALLEN, TEXAS; THURSDAY, FEBRUARY 15, 2024; 4:10 PM

(Call to Order)

THE COURT: Civil Action Number M23-69, Dawn Stapleton, a personal representative of the estate of Joshua Stapleton, and Jacqueline Louise Stapleton v. Ernesto Lozano, Justin Lee Becerra, Cesar Solis, and the City of Progreso, Texas.

MR. NEECE: Good afternoon, Your Honor. Joshua Nees for Ernesto Lozano, Justin Lee Becerra, Cesar Solis, and the city of Progreso.

MR. MANNING: May I approach, Your Honor?

THE COURT: Sure.

MR. MANNING: Good afternoon. Matt Manning for Dawn Stapleton.

THE COURT: We have a -- two motions to dismiss. The defendant/city's motion to dismiss and the individual defendant's motion to dismiss. The Court has seen the motions and the replies, and I ask if any -- if you all -- either side has anything else you would like to add, besides what has been found in writing.

MR. NEECE: Your Honor, based on the propositions we raised in our respective motions for the city and the individuals, I would just like to point out again that there -- as for the city on (indiscernible) liability, there has not been a showing of similar prior incidents to put the city's

policymaker on notice that even if these alleged policies were to be true, as plaintiff claims to be, they would -- the city -- the policymakers themselves would have had notice that they were causing constitutional violations.

THE COURT: Okay, does anybody want to say anything else?

MR. MANNING: Yep, may I say something, Your Honor?

THE COURT: Sure.

MR. MANNING: Thank you, Judge. What we would say here is that --

THE COURT: The first one that we're going to consider is defendant/city's motions to dismiss and then the individual defendant's motion to dismiss. Those are the two motions that I will consider today.

MR. MANNING: Yes, Your Honor. Thank you. May I proceed, Judge?

THE COURT: Sure.

MR. MANNING: Thank you, Your Honor. As it relates to the city, our position is essentially three-fold. The first issue is, we are of the contention that defendant is claiming really an issue of sufficiency rather than plausibility. The way that it is pled, obviously, the Court well knows with -- under Twombly and Iqbal, you take the well-pled facts as true. Taking those well-fed -- well-pled facts as true, excuse me, the issue here, as it relates to policies, we think that

numerosity is not required.

Defendant Lozano, in his interview with the Hidalgo County Sheriff's Office, speaks very clearly when he says, essentially, they customarily do this. This is what normally happens. We think maybe the fire department is watching. And what we think that that culminates in, Your Honor, is a -- at least enough to induce evidence on whether there is a policy that indeed the officers were following.

To that end, the way plaintiffs have pled this is we've pled it such that Chief Solis or former Chief Solis was the official policymaker and was also a participant in the policy, because as the petition claims, he also left the department and was not supervising the inmates for that long pendency of time that is complained of.

So with that being the case, we would submit to the Court that, at least as it relates to the city, there has been not only well-fed -- well-pled facts, but also enough evidence from an employee of the city, who has said how it's customarily done there, to establish that there was a policy, a custom, or a practice of which we're complaining. And obviously, the fact that Mr. Stapleton expired, we're arguing that the moving force of that policy was an inability to respond to his medical needs, and thus, his consequent death.

THE COURT: Okay, the defendant/city's motion to dismiss, the Court has seen that. I've seen the response of

the plaintiffs and the defendant's reply to the response of the plaintiffs. It's clear that what the law is, that the fact that defendant/city argues that the plaintiffs have not met the pleading requirements establishing in defendant/city's liability in this case.

When evaluating a motion to dismiss, the court must treat the allegations as true. The complaint does not need detailed factual allegations, but it requires more than labels and conclusions or a formulaic recitation of the elements of a cause of action. Factual allegations shall provide fair notice of the nature of the claim and grounds on which a claim rests. A well-pleaded complaint may proceed even if actual proof of those facts is improbable and recovery is very remote and unlikely. That's in the Twombly decision.

Plaintiffs have met the requirements to survive a motion to dismiss in this case, as they have adequately pled specific facts that support their claims. Plaintiffs point to four policies' practices of the city and discuss how these policies' practices led to the death of decedent. They also allege facts that would support a failure to train claim. Plaintiffs have met the burden to prevail on this motion to dismiss, and therefore, the Court is not of the opinion that a motion for summary judgment should be granted in this case, for the reasons I've already stated.

Then, there's the individual defendant's motion to

dismiss and the plaintiff's response and the defense -- defendant's reply to that. Does anybody want to add anything other than what you've already filed?

MR. NEECE: Your Honor, I'd just like to reiterate that the defendants' conduct -- all the officers' conduct, including the chief's, were objectively reasonable during this time. Chief Solis was only involved at the arrest. He was not at the jail and has pled in the complaint this -- the -- Joshua Stapleton wouldn't have really been exhibiting signs of being unsteady and his signs of intoxication to more when he was being booked at the jail. So he wouldn't have had -- he wouldn't have had knowledge of any indication that he was suffering from an overdose. And when --

THE COURT: But Defendant Solis was there at one time.

MR. NEECE: At the arrest.

THE COURT: In fact at -- yeah, but in fact, when some of the reasons that the plaintiffs are claiming was the problem. I mean, he may have left, but he was there for a period of time. Defendant Solis claims he only interacted with decedent once before the decedent was in medical distress. However, that's still a fact issue as to how long that was that he was there or not there or what time did he leave or whatever. And so yes, I've seen all the arguments on both sides.

MR. NEECE: Yes, Your Honor, and video footage was provided as well to further illustrate what happened -- actually happened at the jail cell during this time. And in it, it could be seen that Officer Lozano responded within seconds when the calls for help were made. And Officer Becerra applied Narcan in an attempt to help save Mr. Singleton. And their conduct was objectively reasonable. They didn't have any prior indication that he was suffering from a drug overdose.

THE COURT: Anything else from either side?

MR. MANNING: Yes, Your Honor, if I may, very quickly. We would submit to the Court that all three of these individual defendants at some point leaving the station with the custom of their may being -- maybe being someone there or maybe someone not being there exposes all inmates, including he or Mr. Stapleton, to an excessive degree of risk, as the Supreme Court spoke in Farmer v. Brennan.

The issue here is that if you're not there to ascertain whether they need something, you can't provide those serious medical needs. And it's the plaintiff's contention that at some point, all three of them left the station. In fact, I believe when the three women who were in the adjacent cell were arrested, Defendant Solis was the one who initiated that stop, and Defendant Lozano assisted him.

So at some point, it's our understanding that, or at least our belief from the evidence we have so far, that all

three of the defendants may have been gone. That being the case, it's objectively unreasonable to not have anyone there to attend to inmate's needs. Accordingly, we would submit to the Court that qualified immunity would be respectfully inappropriate at this point.

THE COURT: Defendant Solis claims that he only interacted with decedent once before the decedent was in medical distress. He claims that plaintiffs have not pled facts to establish that Defendant Solis should have known about defendant's -- decedent's condition.

Defendant Becerra claims that the facts are -- as pled do not establish that he subjectively believed that decedent was at substantial risk of injury from overdose, and then he said some other things in his pleading. Defendant Lozano argues that there are no pled facts that show he was aware of the severity of decedent's condition or was deliberately indifferent to it, and he alleges they have not pled facts establishing that he acted unreasonably and -- in violation of constitutional law.

The plaintiffs respond that they have adequately pled facts that establish that the individual defendants are not entitled to qualified immunity. They allege that the defendants left the scene unattended for over an hour and ignored the cries of his fellow inmates, who were yelling about his condition. Plaintiffs argue that this is a violation of

decedent's 14th Amendment rights, that those rights were clearly established at the time of this incident, and that defendants were at -- deliberately indifferent to these rights.

Now, I'll get to what the law is. When evaluating a motion to dismiss, a Court must treat the allegations as true. The complaint does not need to tail factual allegations, but it requires more than labels and conclusions or a formulaic recitation of the elements of a cause of action. Factual allegations help provide fair notice of the nature of the claim and the grounds on which a claim rests. A well-pleaded complaint may proceed even if actual proof of those facts is improbable and recovery is very remote and unlikely. That's from the Twombly decision.

Under this standard, plaintiffs have met the well-pledded complaint requirement -- the well-pleaded compliant requirement. They specifically allege facts that, if true, establish a violation of decedent's 14th Amendment rights. The complaint consists of more than conclusions or a recital of the elements of their claims. Therefore, I will deny the motion to dismiss. That doesn't mean that I would grant a motion for summary judgment on behalf of the defendants here, but what I am saying is, that there's sufficient evidence from which a jury could make the determinations under the standards, which the law required before they -- the Court can grant a motion to dismiss.

Do we need a docket control order in this case? Or what do we need now?

MR. MANNING: We would need a docket control order, Your Honor, and but I will add that the (indiscernible) must likely be appealing the officers' immunity, which may cause a discovery stay in terms of the city.

THE COURT: Well, I know what the law is, and I have had serious consideration. I also know what the claims are here, and I also am of the opinion, for the reasons that I've stated, that the Court will not be in a situation where it should be automatically granting those motions. In fact, I stated the reasons why I did not find it appropriate to grant the motions as requested by the defendants here.

MR. MANNING: Yes, Your Honor.

THE COURT: And I stated my legal reasons as to why I denied them. I don't take those motions lightly. When somebody files a motion to dismiss or a motion for summary judgment under these kind of cases, I take them very seriously. I also know what the standard is that would allow the Court to grant those motions, and for the reasons stated, I don't think I have enough of a legal standard to automatically grant those motions.

MR. MANNING: I understand, Your Honor.

THE COURT: If you all don't have anything else, you all can be excused.

MR. NEECE: Thank you, Your Honor.

MR. MANNING: Thank you, Your Honor.

THE COURT: Thanks. I would also suggest that you all have some discussion about -- see if you can resolve this without spending tons of money on litigation.

MR. NEECE: Yes, Your Honor.

MR. MANNING: Yes, Your Honor.

THE COURT: Please take that into consideration on both sides.

MR. NEECE: Yes, Your Honor.

MR. MANNING: We'll have that discussion, Your Honor.

THE COURT: And if you all don't have anything else, you all can be excused. Thank you.

MR. NEECE: Thank you, Your Honor.

MR. MANNING: Thank you, Your Honor.

(Proceedings adjourned at 4:23 p.m.)

I N D E X

RULINGS

| | Page | Line |
|---|---|---|
| Motion to Dismiss, DENIED | 10 | 20 |

C E R T I F I C A T I O N

I, Sonya Ledanski Hyde, certified that the foregoing transcript is a true and accurate record of the proceedings.

Sonya Ledanski Hyde

Veritext Legal Solutions

330 Old Country Road

Suite 300

Mineola, NY 11501

Date: March 1, 2024